[Civ. No. 41600. Second Dist., Div. One. Oct. 30, 1973.]

DAVID GREENBERG, Plaintiff and Appellant, v.
EQUITABLE LIFE ASSURANCE SOCIETY OF THE
UNITED STATES, Defendant and Respondent.

## COUNSEL

Toxey Hall Smith and George D. Donnahoe for Plaintiff and Appellant.

Newlin, Tackabury & Johnston, George W. Tackabury and Arthur W. Francis for Defendant and Respondent.

## OPINION

**THOMPSON, J.**—In this appeal from a judgment of dismissal entered after a demurrer to appellant's first amended complaint was sustained without leave to amend, we conclude that the trial court abused its discretion in not permitting further amendment. We therefore reverse the judgment.

Appellant, suing personally and on behalf of a class of persons similarly situated, filed the complaint which began the case at bench on November 12, 1971. The pleading alleges in substance that respondent insurance company promoted and offered home loans to appellant and other members of the class to be secured by deeds of trust, but only on condition that the borrower purchase a whole life, cash value life insurance policy from respondent of a face amount identical to the loan to be assigned as further security for the indebtedness. The pleading also states that the individual and class plaintiffs could have secured other forms of life insurance or whole life policies from other insurers at less cost than the policy respondent sold as a condition to the loans. Respondent demurred to the complaint on the ground that it was legally inadequate to state a class action, was barred by the statute of limitations, and failed to state a cause of action on behalf of either the named plaintiff or the class represented by him. The demurrer was overruled.

By stipulation with respondent, appellant filed a first amended complaint. That pleading is essentially the same as the original complaint but adds allegations seeking attorneys' fees. Respondent filed a demurrer to the amended pleading. The demurrer asserts failure of the first amended complaint to state a cause of action, misjoinder of parties, and uncertainty. The propriety of the class action allegations was attacked by respondent by a simultaneous motion to strike. Legal issue on the sufficiency of the complaint was joined by contentions in points and authorities—those of appellant, plaintiff, asserting that the first amended complaint alleges facts constituting a cause of action pursuant to Insurance Code section 770, and those of respondent, defendant, arguing that section 770 is inapplicable to the facts as alleged in the attacked pleading. The trial court[1] concluded that no cause of action based upon Insurance Code section 770 was alleged. It reasoned that the section, which precludes a lender in the business of financing real or personal property from requiring insurance "covering such property" to be negotiated through "a particular agent or broker," is inapplicable to the type of transaction alleged in the first amended complaint. Respondent's demurrer was sustained without leave to amend and the motion to strike was placed off calendar.

On this appeal from an ensuing order of dismissal, appellant concedes the validity of the trial court's action in sustaining the demurrer to the first amended complaint. He contends, however, that the trial court abused its discretion in not permitting amendment to the pleading and submits a proposed second amended complaint illustrating the manner in which amendment could be accomplished to state a legally sufficient cause of action.

The proposed amended pleading is founded upon a concept of dealing by respondent in the nature of "tie-in sales." It amplifies the provisions of the first amended complaint by allegations that respondent offered otherwise secured loans to home owners only on condition that the borrower purchase high cost cash value adjustable whole life insurance from respondent and that he borrow the entire amount available on any existing policies of life insurance issued to him by other insurers to assist in paying for insurance issued by respondent. The proposed pleading states also that respondent required a security arrangement which denied purchasers of whole life insurance in the alleged transactions the benefits of accumulating cash values on their policies and that the purchasers, including the named and class plaintiffs, were damaged by reason of the excessively high cost of the insurance sold to them by respondent.

---

[1]The judge who overruled the demurrer to the original complaint did not hear the demurrer to the first amended complaint.

 Appellant has demonstrated error of the trial court in not granting him a right to amend. An order sustaining a demurrer without leave to amend "ordinarily constitutes an abuse of discretion, if there is a reasonable possibility that the defect can be cured by amendment." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 844.) Liberality in permitting amendment is the rule, not only where a complaint is defective as to form but also where it is deficient in substance, if a fair prior opportunity to correct the substantive defect has not been given. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 845; see also *Halsted* v. *County of Sacramento,* 243 Cal.App.2d 584, 586 [52 Cal.Rptr. 637], "[T]he denial of . . . permission [to amend] is now usually found to be an abuse of discretion, except where the impossibility of amendment to state a cause of action is clear.") Here, for all practical purposes, appellant was not afforded an opportunity to correct the substantive defects in the pleading attacked on demurrer. While that document is denominated a first amended complaint, the original complaint was held not vulnerable to demurrer so that the superseding pleading was filed by stipulation. The demurrer, which was here sustained without leave to amend, was the first successful attack upon appellant's pleading. Thus, if a reasonable possibility of amendment to state a cause of action may be divined from the first amended complaint, the trial court's action in sustaining the demurrer to it without leave to amend must be overturned.

Exercising the compulsory hindsight required of reviewing courts by California's ultraliberal amendment of pleadings rule, we find the reasonable possibility here. While, as conceded by appellant, the first amended complaint fails to state a cause of action created by the provisions of Insurance Code section 770 for the forced selection of an insurance agent or broker, it does contain allegations which suggest a cause of action for restraint of trade prohibited by Insurance Code section 790.03. The pleading indicates also the strong possibility that amendment will ripen the suggestion into the reality of a legally adequate complaint.

Insurance Code section 790.03 states in pertinent part: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance . . . (c) Entering into any agreement to commit, or by any concerted action committing, any act of boycott, coercion or intimidation resulting in or tending to result in unreasonable restraint of, or monopoly in, the business of insurance." Section 790.03, subdivision (c), must be construed in light of similar

statutes prohibiting activities in restraint of trade in business other than insurance.[2] "Coercion" prohibited by subdivision (c) is thus coercion in the antitrust sense, conduct which constitutes the improper use of economic power to compel another to submit to the wishes of one who wields it. (*Atlantic Rfg. Co.* v. *FTC,* 381 U.S. 357, 368-369 [14 L.Ed.2d 443, 452-453, 85 S.Ct. 1498]; *Simpson* v. *Union Oil Co.,* 377 U.S. 13, 17 [12 L.Ed.2d 98, 102, 84 S.Ct. 1051]; *United States* v. *National Retail Lumber Dealers Ass'n* (D.C.Colo.) 40 F.Supp. 448, 455.)

■ Respondent's practice in dealing with its customers for home loans, as alleged in the first amended complaint, constitutes one form of the coercive use of economic power to create an unreasonable restraint of trade. The practice results in an illegal "tie-in" agreement.[3] " '[A] tying arrangement may be defined as an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product. . . . Where such conditions are successfully exacted competition on the merits with respect to the tied product is inevitably curbed.' . . . Tying arrangements are illegal per se 'whenever a party has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product' . . . and when 'a total amount of business, substantial enough in terms of dollar-volume so as not to be merely *de minimus,* is foreclosed to competitors by the tie. . . .' " (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.,* 4 Cal.3d 842, 856-857 [94 Cal.Rptr. 785, 484 P.2d 953].) " 'Even absent a showing of market dominance, the crucial economic power may be inferred from the tying products desirability to consumers or from uniqueness in its attributes.' " (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc., supra,* 4 Cal.3d at p. 858.)

---

[2]In *Chicago Title Ins. Co.* v. *Great Western Financial Corp.,* 69 Cal.2d 305 [70 Cal.Rptr. 849, 444 P.2d 481], our Supreme Court, in dealing with a demurrer to a complaint alleging restraint of trade by an insurance company, stated that the Cartwright Act which encompasses the general antitrust law of California is "expressly superseded and contravened by the specific provisions of the Insurance Code." (69 Cal.2d at p. 322.) After making that statement, the court recognized legal prohibitions against trade restraint by insurers when it analyzed the complaint in painstaking detail to determine whether the pleading alleged a cause of action in restraint of trade. While the opinion in *Chicago Title Ins.* does not cite section 790.03, subdivision (c), that provision is the only one other than the Cartwright Act imposing such a prohibition upon insurance companies.

[3]Tie-in agreements are inherently coercive. Underlying the illegality of such agreements is the assumption that ". . . such arrangements coerce the buyer into taking a product he doesn't want . . ." (60 Nw.U.L.Rev. 626), and that ". . . buyers are forced to forego their free choice between competing products." (*Northern Pac. R. Co.* v. *United States,* 356 U.S. 1, 6 [2 L.Ed.2d 545, 550, 78 S.Ct. 514].)

The first amended complaint to which a demurrer was sustained without leave to amend alleges the factual basis of a tying arrangement, the requirement that a person seeking a home loan from respondent purchase a policy of whole life insurance from it. While that pleading is deficient in failing to allege that respondent possesses sufficient economic power to compel a conclusion that the tying arrangement is an illegal restraint of trade, it cannot be concluded that no reasonable possibility of such an allegation was present when the demurrer was sustained. Appellant's proposed amendment demonstrates the existence of such a possibility by stating, granted somewhat imperfectly, that respondent possesses "vast nationwide lending capabilities."

Thus we conclude that there existed a reasonable possibility that appellant's complaint could be amended to state a legally sufficient cause of action when the demurrer to it was sustained.

Respondent argues in opposition to that conclusion that: (1) appellant may not for the first time on appeal assert facts and theories not before the trial court; (2) enforcement of Insurance Code section 790.03 is vested exclusively in the Insurance Commissioner so that a private litigant may not bring an action based upon a violation of the section; and (3) appellant failed to exhaust his administrative remedies before the Insurance Commissioner.

■ Appellant is not here asserting new facts and theories on appeal in a fashion which precludes our consideration of them. Rather he has demonstrated, as he is permitted to do, the reasonable possibility of amendment of a pleading to which a demurrer was sustained without leave to amend.[4] Unquestionably, the trial judge was not given the benefit of the argument which appellant subsequently developed before us. The very nature of California's liberal rule of amendment of pleadings, however, dictates that it is the interest of the client of the inept pleader and not the reversal record of the trial judge that must be given first consideration.

While the Insurance Code in sections 790.04 through 790.08 provides for administrative enforcement of statutes governing insurance companies, including section 790.03, Insurance Code section 790.09 states in pertinent part: "No order to cease and desist issued under this article directed to any person or subsequent administrative or judicial proceeding to enforce the

---

[4]Cf. *Levinson* v. *Bank of America*, 126 Cal.App.2d 122 [271 P.2d 632]. Appellant's situation is different from the case where a plaintiff declines an opportunity to amend a complaint to which a demurrer is sustained with leave to amend. In that case, he is bound by the allegations of his complaint unaided by the possibility of correction by future amendment.

same shall in any way relieve or absolve such person from any . . . civil liability . . . under the laws of this State arising out of the methods, acts or practices found unfair or deceptive." ■ Section 790.09 thus contemplates a private suit to impose civil liability irrespective of governmental action against the insurer for violation of a provision of the Insurance Code. The fair construction is that the person to whom the civil liability runs may enforce it by an appropriate action.[5]

■ Similar reasoning dictates the conclusion that appellant was not required to exhaust his administrative remedy before the Insurance Commissioner before filing the lawsuit which is the case at bench. Respondent concedes that the sole disciplinary authority of the commissioner would be to issue a cease and desist order or obtain an injunction to restrain the illegal conduct. Appellant's complaint seeks damages, and Insurance Code section 790.09 provides specifically that the commissioner's action cannot relieve or absolve the insurer from such a claim. No rule of exhaustion of administrative remedies precludes prosecution of a civil claim without resort to an administrative procedure which is irrelevant to the claim.[6]

Having concluded that the trial court erred in denying appellant leave to amend his complaint, we reverse the judgment of dismissal.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied November 23, 1973.

---

[5]Any other construction would overturn by implication the rule of *Crisci* v. *Security Ins. Co.,* 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]. Insurance Code section 790.03 was amended after the trial of the case at bench to add subdivision (h) (5) which defines as an unfair trade practice by an insurer the refusal to exercise good faith to effectuate settlements of claims.

[6]At most, the potential administrative remedy before the Insurance Commissioner bears upon the propriety of the class action aspect of appellant's cause. That issue is not before us.