[S.F. No. 23843. Mar. 29, 1979.]

ROYAL GLOBE INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF BUTTE COUNTY, Respondent;
RUTH M. KEOPPEL et al., Real Parties in Interest.

## Counsel

Rust & Armenis, Robert Lea, Jon D. Smock and David C. Rust for Petitioner.

Pettit & Martin, Joseph W. Rogers, Jr., and Susan M. Popik as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Minasian, Minasian, Minasian, Spruance & Baber and William H. Baber III for Real Parties in Interest.

Robert E. Cartwright, Edward I. Pollock, Leroy Hersh, David B. Baum, Stephen I. Zetterberg, Robert G. Beloud, Arne Werchick, William P. Camusi, Glen T. Bashore, Ralph Drayton and Leonard Sacks as Amici Curiae on behalf of Real Parties in Interest.

Wesley J. Kinder and Angele Khachadour as Amici Curiae, upon the request of the Supreme Court.

## OPINION

**MOSK, J.**—Subdivision (h) of section 790.03 of the Insurance Code, a provision of the Unfair Practices Act (Ins. Code, § 790 et seq., hereinafter called the act) provides that insurers are prohibited from engaging in certain unfair claims settlement practices set forth in the section.[1] The

[1]All references will be to the Insurance Code, unless otherwise stated.

Section 790.03 provides in part: "The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance.

" . . . . . . . . . . . . . . . . . . . .

"(h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices:

"(1) Misrepresenting to claimants pertinent facts of insurance policy provisions relating to any coverages at issue.

"(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.

"(3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies.

"(4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured.

"(5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear.

"(6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered.

"(7) Attempting to settle a claim by an insured for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

"(8) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, his representative, agent, or broker.

"(9) Failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made.

"(10) Making known to insureds or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration.

"(11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information.

"(12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage.

"(13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for

sole issue in this proceeding is whether an individual who is injured by the alleged negligence of an insured may sue the negligent party's insurer for violation of the subdivision.

Ruth M. Keoppel (plaintiff) filed an action for personal injuries incurred as a result of a fall when she slipped at a food market. She joined as defendants Royal Globe Insurance Company (defendant), which had issued a policy of liability insurance to the market, and Robert E. Hunt Company (Hunt), an independent adjusting company which provided adjustment services to Royal Globe and was alleged to be its agent. According to the complaint, defendant violated subdivision (h)(5) of the act in that it had refused "to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of plaintiff's claim although "liability . . . [had] become reasonably clear," and Hunt had advised plaintiff not to obtain the services of an attorney, in violation of subdivision (h)(14). Plaintiff sought damages for physical and emotional distress, as well as punitive damages.[2]

Defendant demurred to the complaint and filed a motion for judgment on the pleadings on the grounds that the California Insurance Commissioner (commissioner) has the exclusive power to enforce subdivision (h), that a third party claimant has no standing to bring an action under the subdivision because it was intended by the Legislature only to protect the interests of the insured, and that plaintiff may not sue both the insured and the insurer in the same lawsuit. The trial court overruled the demurrer and denied the motion. Defendant seeks a writ of mandate, directing the trial court to vacate its orders.

We hold that a third party claimant may sue an insurer for violating subdivisions (h)(5) and (h)(14), but that the third party's suit may not be brought until the action between the injured party and the insured is concluded.

The purpose of the act is "to regulate trade practices in the business of insurance . . . by defining . . . such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined." (§ 790.) Section 790.02 prohibits any person from engaging in

---

the offer of a compromise settlement.

"(14) Directly advising a claimant not to obtain the services of an attorney.

"(15) Misleading a claimant as to the applicable statute of limitations."

[2]Plaintiff's husband also joined in the action, alleging that he lost plaintiff's services and incurred expenses as a result of her injuries.

any trade practice defined in section 790.03 as "an unfair or deceptive act or practice in the business of insurance." The commissioner is empowered to investigate the affairs of insurers (§ 790.04), and if he has reason to believe that an insurer is engaged in an unfair or deceptive act or practice defined in section 790.03, he shall, after notice and hearing, issue a cease and desist order. (§ 790.05.) A penalty of $50 may be imposed for violation of such an order, or $500 for a wilful violation, and subsequent violations may result in suspension or revocation of an insurer's license. (§ 790.07.)

The act was adopted in 1959, and was patterned after the National Association of Insurance Commissioners' model legislation. In 1959, neither the model bill nor the California act contained a provision prohibiting unfair claims settlement practices, but in 1972, after the model legislation was amended to include such prohibitions, California enacted Assembly Bill No. 459, adding subdivision (h), patterned after the model act. There were, however, some differences between the California act and the model legislation, to which we will refer *infra*.

In considering the issues before us, we determine, first, whether a private litigant may bring an action to impose civil liability for violation of section 790.03 or whether the commissioner has the sole authority to enforce the terms of the section by the issuance of cease and desist orders to prevent future misconduct.

In making this determination, we turn to the language of the act. ■ Section 790.09 provides that a cease and desist order issued by the commissioner under the provisions of the act shall not absolve an insurer from "*civil liability* or criminal penalty *under the laws of this State arising out of the methods, acts or practices found unfair or deceptive.*" (Italics added.) This provision appears to afford to private litigants a cause of action against insurers which commit the unfair acts or practices defined in subdivision (h).

This interpretation of section 790.09 has been adopted in several recent cases. In *Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994 [110 Cal.Rptr. 470], the plaintiff brought a class action alleging that the defendant insurer had illegally compelled borrowers to purchase policies of life insurance as a condition of obtaining home loans. It was held that these allegations constituted a cause of action based upon subdivision (c) of section 790.03, which prohibits coercion by an insurer resulting in unreasonable restraint of the business of insurance. In reply

to the defendant's assertion that only the commissioner has the right to enforce the section, the court held that section 790.09 "contemplates a private suit to impose civil liability irrespective of governmental action against the insurer for violation of a provision of the Insurance Code. The fair construction is that the person to whom the civil liability runs may enforce it by an appropriate action." (34 Cal.App.3d at p. 1001.)

*Greenberg* was followed by *Shernoff* v. *Superior Court* (1975) 44 Cal.App.3d 406 [118 Cal.Rptr. 680]. There, plaintiffs filed a class action for damages against several title insurers, alleging a conspiracy to fix title insurance rates. The defendants asserted that plaintiffs had failed to exhaust their administrative remedies before the commissioner. The court declared that, while the commissioner does not have power under the act to award money damages for past injuries, the courts may award such damages.[3] Defendants claimed, as in *Greenberg,* that only the commissioner has power to enforce the act; the court rejected this holding, quoting at length from *Greenberg.* The same principles were applied in *Homestead Supplies, Inc.* v. *Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 992 [147 Cal.Rptr. 22]. These well-reasoned authorities make it clear, therefore, that private litigants may rely upon the proscriptions set forth in the act as a basis for the imposition of civil liability upon an insurer.

Defendant insists that section 790.09 does not provide affirmative authority for the filing of a civil suit based on alleged violations of the act, and contends that the section was merely intended to allow a party to bring a civil action on the basis of authority derived from other provisions of law. It should be noted in this connection that, while the model act states that a person shall not be absolved of liability under any "other" state laws, the California act in section 790.09 eliminates the word "other" and provides that an insurer shall not be absolved from "civil liability . . . under the laws of this State" arising out of the insurer's unfair acts.

Defendant's contention is contrary to the holdings of both *Greenberg* and *Shernoff.* Defendant asserts that *Greenberg* is distinguishable because the complaint there was based upon tie-in sales coerced by an insurer, a practice which is illegal even without the prohibition contained in section 790.03. However, the court determined that the general antitrust prohibitions of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.) were

---

[3]Although the opinion does not state expressly that the suit was based upon the provisions of the act, this is clear from the references to sections 790.09 and 790.03 in the opinion.

inapplicable to insurance companies and that only section 790.03 prohibits insurers from engaging in anticompetitive activity. (34 Cal.App.3d at p. 999, fn. 2.) Thus, it expressly recognized that only the act prohibits anticompetitive activity by an insurer, and held that the plaintiff could rely upon the provisions of the act in bringing a private suit for civil damages.

■ Both defendant and amicus curiae, State Farm Mutual Automobile Insurance Company, argue that the legislative history of the act demonstrates that it was not intended to apply to actions brought by private parties. Defendant relies upon a letter sent to the trial court by Richards D. Barger, who was Insurance Commissioner at the time subdivision (h) was enacted and actively supported the measure; he is now an attorney in private law practice. The letter declares that the intent of the act was to afford the commissioner certain remedies against insurers and not to grant a cause of action to third party litigants based upon an insurer's violation of the act.[4] The writer was not a legislator, and was not acting on behalf of the Legislature in supporting the measure. Thus, his understanding of the meaning of the provision is not persuasive evidence of the Legislature's intention. (See *Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 311-312, fn. 8 [118 Cal.Rptr. 473, 530 P.2d 161]; cf. *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 589-591 [128 Cal.Rptr. 427, 546 P.2d 1371].) The other matters relied upon by defendant and amicus as evidence of legislative intent are too general or remote to provide any firm guidance in this regard.[5]

Another argument of defendant is that the act was based upon the Federal Trade Commission Act (15 U.S.C.A. § 41 et seq.), that the

[4]The letter states in part, "A careful review of the history of the NAIC Model Bill and its enactment by the several states . . . clearly shows that the purpose and intent of the NAIC Model Act and the provisions inserted in the California Insurance Code in section 790 et seq. was to allow the Insurance Commissioner the right of regulatory oversight over certain practices of insurers admitted in the State of California, and never contemplated a private cause of action by a third party. To allow otherwise would be to expand the administrative remedies far beyond those contemplated by the Commissioners when the NAIC Model Bill was adopted and enacted into law in the State of California."

[5]For example, a letter from Assemblyman Pierson who sponsored Assembly Bill No. 459 to the Governor states that the bill is based upon the model act, and that a number of amendments were made to the bill in cooperation with "the interested segments of the insurance business which made the bill unobjectionable to the industry." The legislative analyst stated in an analysis of the bill that "The Department of Insurance advises that, as the bill serves primarily to make more specific the prohibitions against unfair practices already implied in the law, no increased state cost is anticipated under the measure." Other documents offered relate to matters too remote to provide an indication of the Legislature's intentions.

purpose of the federal legislation is to regulate unfair practices in commerce, and that since there is no private right of action under the federal legislation (*Holloway* v. *Bristol-Myers Corporation* (D.C.Cir. 1973) 485 F.2d 986), the same result should follow with regard to subdivision (h). But the federal statute contains no provision equivalent to section 790.09. Indeed, as pointed out in *Holloway,* the federal legislation relates "expressly . . . only to enforcement proceedings brought by the Commission or the Attorney General, or the review thereof." (485 F.2d at p. 1001.)

 We come, next, to the contention that even if a private litigant may impose civil liability upon an insurer for violations of the act, an insurer's duty runs only to the insured, and third party claimants such as plaintiff in the present case are precluded from relying upon the act as a basis for suit. But an examination of the language of subdivision (h) demonstrates that it was intended to prohibit unfair settlement practices by insurers directed against both claimants and insureds. For example, the subdivision prohibits misrepresenting the facts regarding policy coverage to claimants (subd. (h)(1)), misleading a claimant as to the applicable statute of limitations (subd. (h)(15)), and advising a claimant not to obtain the services of an attorney (subd. (h)(14)). Some of the subdivisions refer to claimants and insureds separately (subds. (h)(10), (h)(11)), and others only to insureds (subds. (h)(6), (h)(7)). Thus, the subdivision by its own terms extends certain of its protections to claimants, some to insureds, and others to both claimants and insureds.

Of the two subdivisions upon which plaintiff's action is based, one refers specifically to a claimant, i.e., subdivision (h)(14), which prohibits "advising a claimant not to obtain the services of an attorney" and the other appears to cover both claimants and insureds in providing that it is an unfair practice to fail to attempt "in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear" (subd. (h)(5)).

Another indication that the Legislature intended the language of the subdivision to protect claimants is revealed by the legislative history of the measure. When Assembly Bill No. 459, which added subdivision (h) to the act, was enacted in 1972, a representative of the Department of Insurance testified before various legislative committees that the measure "could be construed to affect third parties." He also referred to this matter in conversations with the staffs of the committees. According to

him, "[n]obody argued against that position."[6] The department, in a "Bill Analysis" sent to Assemblyman Pierson, a sponsor of the measure, noted that the bill needed clarification, that some of the unfair claims settlement practices appeared to apply to insureds, some to third parties, and some to both. No change was made in the measure in spite of these concerns. Since the legislative committees which considered the bill were expressly made aware that—as clearly appears from the face of subdivision (h)—some of the practices specified therein applied to claimants, and nevertheless refrained from amending the bill to indicate otherwise, it is a reasonable implication that the committees' inaction represented a deliberate decision that third party claimants were to enjoy the protection afforded by the bill. (Cf. *Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 603 [45 Cal.Rptr. 512].) In accordance with this understanding of the scope of subdivision (h) the department investigates complaints from third parties in connection with its enforcement powers under the act.[7] In 1977 the Policy Services Bureau of the department resolved 14,740 claim complaints, of which 492 were third party complaints.

Defendant relies heavily on *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937 [132 Cal.Rptr. 424, 553 P.2d 584]. In that case, we held that a third party claimant who had recovered a judgment against the insured for an amount in excess of the policy limits but who had not secured an assignment of the insured's cause of action could not sue the insurer for breach of the duty to settle. Our holding was based primarily upon contractual principles. That is, we held that since the third party claimant was not a party to the contract between the insured and the insurer and the duty to settle which the insurer owes to the insured is intended to protect the insured from liability for excess coverage rather than to benefit the injured claimant, neither the third party beneficiary doctrine, the provisions of section 11580, subdivision (b)(2), of the Insurance Code,[8] nor the Financial Responsibility Law (Veh. Code, § 16000 et seq.)

[6]The commissioner filed an amicus curiae brief reviewing the legislative history of the act. The information regarding the testimony referred to above is contained in the exhibits to that brief, in the form of an interdepartmental communication sent to the chief counsel for the Department of Insurance.

[7]The commissioner's amicus curiae brief concludes that neither the Legislature nor the drafters of the model bill addressed the question of whether the claim settlement practices set forth in the subdivision are applicable to third party claimants.

[8]Section 11580, subdivision (b)(2), provides that an insurance policy delivered in California must contain a provision that "whenever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

require that the injured party be permitted to sue for a breach of the duty to settle.

In the present case, plaintiff does not seek to rely upon the violation of the insurer's duty to its insured to settle plaintiff's claim. Rather, she relies upon the insurer's duty owed to her as a claimant under subdivisions (h)(5) and (h)(14) of section 790.03, a duty created by those statutory provisions and owed directly to plaintiff as a claimant.

■ Another contention of defendant is that a third party claimant may not base an action against an insurer upon a single instance of unfair conduct specified by subdivision (h), but that improper conduct is actionable only if it is committed with such frequency as to indicate a general business practice.

The language of the subdivision is ambiguous in this respect. It prohibits "Knowingly committing or performing with such frequency as to indicate a general business practice" any of the unfair claims settlement practices set forth. It is unclear whether the words "with such frequency as to indicate a general business practice" were intended to modify both the terms "Knowingly committing" and "performing."[9] Amicus curiae, the California Trial Lawyers Association, suggest that the language quoted provides for two alternative methods by which the prohibited acts may be shown, i.e., a violation of the subdivision occurs if the prohibited acts are knowingly committed on one occasion or, if knowledge cannot be established, then it will suffice if the acts were performed with such frequency as to indicate a general business practice. This interpretation of the meaning of the section has been adopted by a commentator in reviewing certain amendments to subdivision (h) in 1975. (*Review of Selected 1975 California Legislation* (1976) 7 Pacific L.J. 484.) Amicus curiae representing State Farm Mutual Automobile Insurance Company claims, on the other hand, that the reference to unfair "practices" in the phrase in question implies repeated misconduct,[10] and that, if the provision had been intended to render actionable a single unfair act, correct punctuation would call for placing commas around the phrase, "or performing with such frequency as to indicate a general business practice."

The ambiguity in the introductory language is not dispelled by the listing of the matters which constituted unfair conduct, for some of these

[9] The model act does not contain the word "Knowingly."

[10] We note, however, that section 790.03 provides that the section defines unfair "acts" or practices.

are referred to in the singular and others in the plural. For example, subdivision (h)(1) prohibits misrepresenting to claimants "insurance-policy provisions relating to . . . coverages," while subdivision (h)(15) proscribes misleading "a claimant as to the applicable statute of limitations."[11]

It seems clear to us that this issue is not independent of the matters we have discussed above. If, as we conclude, the act affords a private party, including a third party claimant, a right to sue an insurer for violating subdivision (h), it is inconceivable that the Legislature intended that such a litigant would be required to show that the insurer committed the acts prohibited by that provision "with such frequency as to indicate a general business practice." There would be no rational reason why an insured or a third party claimant injured by an insurer's unfair conduct, knowingly performed, should be required to demonstrate that the insurer had frequently been guilty of the same type of misconduct involving other victims in the past. The department's policy is to require repeated misconduct as the basis for the enforcement of subdivision (h); while repetition of prohibited acts is relevant to the duty of the insurance commissioner to issue a cease and desist order, to an aggrieved private litigant who can demonstrate that the insurer acted deliberately, the frequency of the insurer's misconduct and its application to others is irrelevant. Although the language of the statute is not clear, if the premise is accepted that a private party may bring an action for an insurer's violation of subdivision (h) under the rationale of *Greenberg* and *Shernoff*, then a single violation knowingly committed is a sufficient basis for such an action.

■ Finally, we agree with defendant that plaintiff may not sue both the insurer and the insured in the same lawsuit. Section 1155 of the Evidence Code provides that evidence of insurance is inadmissible to prove negligence or wrongdoing. The obvious purpose of the provision is to prevent the prejudicial use of evidence of liability insurance in an action against an insured. (See, e.g., *Citti* v. *Bava* (1928) 204 Cal. 136, 139 [266 P. 954]; *Rising* v. *Veatch* (1931) 117 Cal.App. 404, 406 [3 P.2d 1023].) A joint trial against the insured for negligence and against the insurer for violating its duties under subdivision (h) would obviously violate both the letter and spirit of the section.[12]

[11]The amicus curiae brief of the commissioner concludes that neither the commissioner nor the drafters of the model act considered the question whether repeated violations are required in order to sue an insurer for civil liability under the act.

[12]Contrary to plaintiff's assertion, *Mel H. Binning, Inc.* v. *Safeco Ins. Co.* (1977) 74 Cal.App.3d 615 [141 Cal.Rptr. 547], does not support her assertion that she may proceed

Moreover, unless the trial against the insurer is postponed until the liability of the insured is first determined, the defense of the insured may be seriously hampered by discovery initiated by the injured claimant against the insurer. In addition, damages suffered by the injured party as a result of the insurer's violation of subdivisions (h)(5) and (h)(14) may best be determined after the conclusion of the action by the third party claimant against the insured. Thus, plaintiff's claim against defendant was brought prematurely and the trial court should have sustained defendant's demurrer and granted the motion for judgment on the pleadings on that ground.

Let a writ of mandate issue to direct the trial court to vacate its orders and to enter judgment for defendant.

Bird, C. J., Tobriner, J., and Newman, J., concurred.

**RICHARDSON, J.,** Concurring and Dissenting.—I concur in the judgment, but not in the majority's analysis of the case. The majority, relying solely upon two inapposite provisions of the Insurance Code, would permit an unprecedented civil action against an insurance carrier by a third person injured through the alleged negligence of the insured. The majority finds the present action "premature," because plaintiff has not yet established the insured's liability. In my view, not only is the action premature, but it is squarely contrary to prior law, and accomplishes a result which is clearly violative of legislative intent.

The complaint herein alleges, among other things, that defendant Royal Globe refused "to attempt in good faith to effectuate a prompt, fair, and equitable settlement" of plaintiff's negligence claim against the insured (Raleys, a food market chain) despite the fact that the insured's liability to plaintiff had become "reasonably clear." Plaintiff's theory of recovery is that an insurance company may be held directly liable to the injured party for refusing in bad faith to settle his claim against the insured.

Only three years ago we *unanimously* held, in *Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937 [132 Cal.Rptr. 424, 553 P.2d 584], that the

to try her action against both the insurer and the insured in a joint trial. In *Binning*, the plaintiff alleged causes of action against three insureds and their insurer, in a single complaint, basing the liability of the insurer upon allegations of fraud. It was held that he had stated a cause of action against the insurer, but the opinion does not discuss the question whether a joint trial would be appropriate.

insurer's duty to settle *runs to the insured* and *not to the injured party,* and that, accordingly, the latter may *not* recover from the insurer for breach of that duty in the absence of a proper formal assignment of the insured's cause of action. In carefully describing the relationship of insured-carrier-third-party claimant, we said in *Murphy*: "The duty to settle is implied in law *to protect the insured* from exposure to liability in excess of coverage as a result of the insurer's gamble—on which only the insured might lose. (See *Shapero* v. *Allstate Ins. Co.* (1971) 14 Cal.App.3d 433 [92 Cal.Rptr. 244].) [¶] *The insurer's duty to settle does not directly benefit the injured claimant. In fact, he usually benefits from the duty's breach.* Instead of receiving an award near policy limits, he stands to obtain judgment exceeding policy coverage. For instance, in the present case plaintiff has already received an amount equal to her highest settlement demand, holding an unsatisfied judgment for an additional $17,500. [¶] The insurer's duty to settle—*running to the insured and not to the injured claimant*—is also demonstrated by *Shapero* v. *Allstate Ins. Co., supra,* 14 Cal.App.3d 433. The insured died leaving no asset other than the insurance policy. Thus, a judgment in excess of policy limits presenting no risk to the insured or to his heirs, the insurer had no duty to settle within policy limits." (Italics added, p. 941.)

The majority herein does not purport directly to disapprove *Murphy.* Its approach is more oblique. Instead, it depends upon the carrier's supposed *statutory* duty to third persons such as plaintiff to achieve good faith settlements of claims against an insured. As will appear, however, the applicable statutory duty runs only to the insured and will not support a direct, third party action against the insurer.

The majority relies upon Insurance Code sections 790.03, subdivision (h)(5), and 790.09. The former section describes various unfair and deceptive insurance business practices, including a carrier's *frequent* refusal to settle, while the latter section preserves any preexisting civil or criminal liability which the insurer might face under *other* statutory or decisional law. Contrary to the majority view, neither provision creates or authorizes the direct action against the insurer by the injured party which the majority has conjured.

*1. Section 790.03, Subdivision (h)*

As a basis for its creation of this new cause of action, the majority seizes upon section 790.03 which lists various unfair and deceptive practices, including "(h) Knowingly committing or performing *with such*

*frequency as to indicate a general business practice* any of the following unfair claims settlement practices: [¶] . . . (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." (Italics added.) The majority holds that henceforth a third party such as plaintiff may directly sue the insurer to recover damages arising from *a single act* of refusal to settle under the foregoing section. Yet, under the clear and very express language of subdivision (h), the conduct specified therein does not become unfair or unlawful until those acts are repeated with such frequency as to constitute a "general business practice."

The majority attempts to circumvent the plain meaning of section 790.03, subdivision (h), by purporting to find an "ambiguity" in that language. According to the majority, "The language of the subdivision is ambiguous . . . . It prohibits 'Knowingly committing or performing with such frequency as to indicate a general business practice' any of the unfair claims settlement practices set forth. It is unclear whether the words 'with such frequency as to indicate a general business practice' were intended to modify both the terms 'Knowingly committing' and 'performing.' " (*Ante*, p. 890.)

I respectfully suggest that the majority's analysis is erroneous in its labored attempt to find an ambiguity where none whatever exists. Under this strained interpretation, the majority reads subdivision (h) as distinguishing between acts "knowingly committed" and acts "performed," limiting to the latter class the qualifying phrase "with such frequency" etc. In essence, the majority's reading simply deletes the "frequency" requirement of the act. This is strange parsing. First, it will be noted that no comma separates the words—"committing or performing," suggesting that they are to be read together. Furthermore, the majority would split the two present participles "committing" and "performing," applying the modifying "frequency" clause to the "performing" but not to the "committing" function. It seems obvious, however, that one could not *unknowingly* either "commit" or "perform" a prohibited act under the statute, thus strongly suggesting that the term "knowingly" applies to both "committing" and "performing" and that they are to be read together. Similarly, if they are to be read together for purposes of the adverb "knowingly," in consistent fashion they should be read together for purposes of the "frequency" clause.

The analytical fault of the majority becomes even more glaring with its further conclusion that ". . . it is inconceivable that the Legislature

intended that such a [third party] litigant would be required to show that the insurer committed the acts prohibited by [subd. (h)] 'with such frequency as to indicate a general business practice.' There would be no rational reason why an insured or a third party claimant injured by an insurer's unfair conduct, knowingly performed, should be required to demonstrate that the insurer had frequently been guilty of the same type of misconduct involving other victims in the past." (*Ante,* p. 891.) Such a contention ignores the simple, and I suggest much more accurate, explanation for the "frequency" requirement, an explanation which is neither "inconceivable" nor irrational: By adopting subdivision (h) of section 790.03, the Legislature had no intent to create any civil liability *to anyone* for the acts specified in that subdivision. Rather, such acts were to be considered unfair practices subject to *administrative* regulation and discipline and then only if committed with the requisite frequency.

Section 790.03 appears in an article denominated "Unfair Practices." The purpose of the article is regulation of trade practices (§ 790). The proscribed acts are defined as unfair competition or unfair practices, subject to specific administrative action (§ 790.04). The remedies for these administrative infractions are clearly defined in sections 790.05-790.09. For purposes of administering the "Unfair Practices" article, the commissioner is authorized to issue reasonable rules and regulations under section 790.10.

Properly construed the section proscribes several types of conduct when they are carried out with sufficient frequency to demonstrate that they have become a *general* business practice. If the conduct is occasional only and has not occurred often enough to ripen into a *general* practice, it is not the subject of examination, investigation, order to show cause, and injunctive or cease and desist functions of the commissioner which are described in the immediately ensuing code sections commencing with section 790.04. It follows that if a single, isolated act is asserted it is not the subject of discipline. A fortiori, it is not the basis for creation of an even more onerous burden than administrative sanction, namely, a new civil cause of action in favor of each *third party* who may have a tort claim against the carrier's insured.

Thus, as I amplify below, the majority's major premise is unsound. Nothing in the Insurance Code provisions supports any theory that a bad faith refusal to settle (or any other asserted unfair practice) is either actionable by, or creates any new civil remedy in favor of, a *third party*. As we recently explained in *Murphy, supra,* California has consistently

held that the duty to settle *runs to the insured.* Section 790.03, subdivision (h), creates neither a new *independent* duty nor civil liability which may be extended beyond the insured to *third parties.*

### 2. *Section 790.09*

Sensing the inadequacy of its section 790.03 argument, and looking for an alternative legal basis, the majority settles upon section 790.09. This section provides that "No order to cease and desist issued under this article directed to any person or subsequent administrative or judicial proceeding to enforce the same shall in any way relieve or absolve such person from any administrative action against the license or certificate of such person, civil liability or criminal penalty under the laws of this State arising out of the methods, acts or practices found unfair or deceptive."

It would seem obvious that the foregoing provision was intended to *preserve* any civil or criminal liability already provided for under state law, rather than to *create* new liability thereby changing preexisting state law. Yet despite the apparently clear intent of the section the majority, in my view unconvincingly, states that "This provision [§ 790.09] appears to afford to private litigants a cause of action against insurers which commit the unfair acts or practices defined in subdivision (h)." (*Ante,* p. 885.) With due respect, I suggest that by the seizure of such straws the majority graphically underscores the vacuity of its argument.

If, as the majority asserts, the Legislature had intended to change the course of California law 180 degrees and thereafter to impose upon carriers civil liability to injured third persons for failing to settle claims against their insured, then surely much more direct and precise language would have been selected. Instead of merely providing that administrative proceedings under the act would not "relieve or absolve" an insurer from civil liability "under the laws of this State," one would reasonably have expected that the Legislature simply would have directly imposed such liability in clear, understandable, unmistakable terms, as it has done in numerous other statutes.

For example, the Unfair Practices Act of 1941 (Bus. & Prof. Code, § 17000 et seq.) describes various unfair trade practices and then expressly provides that "Any person . . . may bring an action to enjoin and restrain any violation of this chapter and, in addition thereto, for the recovery of damages." (*Id.,* § 17070.) I find it revealing that in 1941 the Legislature was fully capable of writing an unambiguous statute creating

civil liability for particular unfair business practices. In my view, the wide disparity in clarity of language between Insurance Code section 790.09 and Business and Professions Code section 17070 is conclusive evidence of the legislative intent to preclude third party civil actions unless and until such actions are expressly authorized. The legislative tools were at hand. They were not used.

Moreover, it is highly significant, I suggest, that the California Insurance Commissioner, who is charged with the responsibility of administering and implementing the act in question (see Ins. Code, §§ 790.04-790.10), fully supports the foregoing analysis. The commissioner's amicus curiae brief herein explains that he has reviewed the available legislative history and has determined that the act's framers had no intent to create a private cause of action. "Rather," according to the commissioner, "care was taken . . . not to preclude any civil or criminal actions which might exist for the same act or practice." The commissioner further concluded, consistent with the analysis advanced in section 1 of this dissent, that "the question of whether a civil cause of action is created by a single act [as opposed to a frequent business practice] in violation of § 790.03(h) was apparently considered by neither the insurance regulators nor the insurance industry at the time that Section was enacted. *Since its enactment, the Department has consistently construed that Section to require a general business practice in order to establish a violation.*" (Italics added.) Focusing on a claimed *single act,* the majority imposes onerous civil liability for conduct that is not even subject to administrative discipline.

As we have frequently emphasized, the contemporaneous construction of agencies charged with administering legislation is entitled to great weight. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245-246 [149 Cal.Rptr. 239, 583 P.2d 1281].) Nonetheless, the majority wholly ignores this well established interpretive principle.

The majority relies primarily upon *Greenberg* v. *Equitable Life Assur. Society* (1973) 34 Cal.App.3d 994 [110 Cal.Rptr. 470], and upon two subsequent cases which have repeated its language without further analysis. *Greenberg* is not controlling, for that case involved a suit *by the insured* to recover against the insurer for its unfair practice, an illegal "tie-in" agreement. The court reviewed the language of section 790.09, and concluded without extensive discussion that the section "contemplates a private suit to impose civil liability irrespective of governmental

action against the insurer," and that "The fair construction is that the person *to whom the civil liability runs* may enforce it by an appropriate action." (Italics added, p. 1001, fn. omitted.) In a footnote, the court explained its reasoning: "Any other construction would overturn by implication the rule of *Crisci* v. *Security Ins. Co.*, 66 Cal.2d 425 . . . ." (*Ibid.*, fn. 5.)

It thus becomes very clear that *Greenberg* assumed that it was necessary to construe section 790.09 as "contemplating" a private action in order to preserve the *Crisci* rule. In *Crisci* we were concerned exclusively with an insurer's liability *to the insured* (i.e., "the person to whom the civil liability runs") for a bad faith refusal to settle claims. The *Crisci* rule was founded on the duty included within an implied covenant of good faith and fair dealing between contracting parties. Neither *Greenberg* nor *Crisci* involved a third party action, nor did the *Greenberg* court even remotely suggest that such an action would be appropriate, under section 790.09 or otherwise, in a refusal-to-settle situation. Furthermore, the *Greenberg* analysis regarding section 790.09 is dubious in any event. No compelling reason is given for concluding that our *Crisci* decision, involving the carrier's liability to the insured, would be affected in any way by holding that section 790.09 preserves, but does not create, new civil liability for the single commission of an act falling within the unfair practices described in the section.

In conclusion, neither the statutory nor decisional law supports the majority's holding herein. It seems predictable that in almost every case in which an insurer hereafter declines a settlement offer the injured third party claimant will be tempted to file an independent action against the carrier despite the clear admonition in our recent unanimous *Murphy* decision that the insurer's duty to settle runs to the *insured* and *not* to the *injured party.*

The gratuitous creation of such a new remedy is wholly inconsistent both with our own firmly established California precedent, and with a fair and reasoned analysis of the applicable legislation.

For all the foregoing reasons, I would grant the peremptory writ.

Clark, J., and Manuel, J., concurred.

Petitioner's application for a rehearing was denied May 16, 1979. Clark, J., Richardson, J., and Manuel, J., were of the opinion that the application should be granted.