[No. B100063. Second Dist., Div. Two. Dec. 11, 1996.]

DEBBIE ANN McCARTHY, Plaintiff and Appellant, v.
LESLIE H. MARTINSON et al., Defendants and Respondents.

## COUNSEL

Ross & Morrison, Gary B. Ross, Andrew D. Morrison, Schulman & Miller, Jerry Miller and Barry A. Schulman for Plaintiff and Appellant.

Harrington, Foxx, Dubrow & Canter, Edward R. Leonard and Angela P. Lui for Defendants and Respondents.

## OPINION

**NOTT, J.**—In a 1985 decision that raised the eyebrows of legal scholars and the temperature of the business community, the California Supreme Court held that a residential landlord could be strictly liable to a tenant for latent defects in an apartment. (*Becker* v. *IRM Corp.* (1985) 38 Cal.3d 454 [213 Cal.Rptr. 213, 698 P.2d 116, 48 A.L.R.4th 601].) The Supreme Court has recently reversed that part of *Becker* which dealt with strict liability. (*Peterson* v. *Superior Court* (1995) 10 Cal.4th 1185 [43 Cal.Rptr.2d 836, 899 P.2d 905].)[1] The question before us is whether *Peterson* applies retroactively. We hold that it does.

### FACTS

The facts are not in dispute. In September of 1986, respondents Leslie H. and Constance Martinson purchased an existing 26-unit apartment building that contained untempered glass sliding doors. Respondents had no part in the construction of the building or the installation of any glass doors.

On August 1, 1992, appellant Debbie Ann McCarthy leased one of the apartments from respondents. Twelve days later, she sustained cuts when she

---

[1]Discussed, *post*, is an unrelated 1982 case with the identical name. For convenience, any reference to the 1982 case will include the full citation. Any reference to "*Peterson*" is to the 1995 case.

inadvertently walked through the untempered glass door leading to her balcony.

Appellant filed a complaint against respondents, alleging causes of action for strict liability, negligence, and breach of the implied warranty of habitability. Trial was initially set for June 21, 1995, but was twice continued until August 28, 1995. The *Peterson* decision was issued on August 21, 1995.

Just prior to the commencement of the August 28 trial, respondents made a motion *in limine* to dismiss the cause of action for strict liability. The motion was based on *Peterson*. The trial court vacated the trial date and took the matter under submission until September 22, 1995, when *Peterson* became final. On that date, the trial court held that *Peterson* had retroactive effect. The trial court therefore ordered that any reference to strict liability would be excluded at trial.

On November 8, 1995, appellant presented her case to a jury on the theories of negligence and breach of implied warranty of habitability. On November 21, 1995, the jury returned defense verdicts on both causes of action. Respondents were subsequently awarded costs of $15,000.

### CONTENTIONS ON APPEAL

Appellant contends that: to apply the recent *Peterson* decision retroactively would be unfair to her in that the public had relied on *Becker* for 10 years; the reversal of *Becker* was not foreseeable; the parties relied on *Becker* in making the lease agreement; and the administration of justice would be negatively impacted by forcing litigants to "redefine their litigation strategy midstream." Appellant urges that if we do not give complete prospective application to *Peterson*, we should give partial prospectivity. She claims at the very least *Peterson* should not apply to ongoing litigation where the "discovery cut-off dates" occurred prior to its finality.

### DISCUSSION

#### 1. *Principles of Retroactivity*

A time-honored rule of jurisprudence is that judicial decisions operate retroactively while new statutes operate prospectively. (*United States* v. *Security Industrial Bank* (1982) 459 U.S. 70, 79 [74 L.Ed.2d 235, 243-244, 103 S.Ct. 407]; *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 978-979 [258 Cal.Rptr. 592, 772 P.2d 1059].) However, as it applies to

judicial decisions, that rule is a general one. Exceptions may be made where the retroactive effect of a decision would be unfair or violate public policy. (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 151-152 [181 Cal.Rptr. 784, 642 P.2d 1305]; *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 [250 Cal.Rptr. 116, 758 P.2d 58]; *Douglas* v. *Ostermeier* (1991) 1 Cal.App.4th 729, 741-742 [2 Cal.Rptr.2d 594].) To determine whether an exception is warranted, an analysis should be made regarding the purpose of the new rule; the extent of the public's reliance on the former law; the public's ability to foresee the coming change; and the effect on the administration of justice by a retroactive application of the new rule. (*Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1203-1204, 87 S.Ct. 1967]; *Peterson* v. *Superior Court, supra*, 31 Cal.3d at pp. 152-153.)

### a. *The Purpose of the New Rule*

 To understand the reason for the Supreme Court's reversal of the strict liability portion of *Becker*, some background is in order.

In *Becker*, the plaintiff rented an apartment from the defendant. The plaintiff fell against a shower door, which was made of untempered glass. The door shattered, lacerating the plaintiff's arm. The apartment complex had been built for more than 10 years before the defendant acquired it. In a five-to-two decision (Justice Mosk and then Associate Justice Lucas dissenting), the Supreme Court concluded that a cause of action based on strict liability for personal injury caused by a defective product should be allowed against the defendant landlord. The rationale was that in renting an apartment that contained a defective product, the landlord was placing that product in the stream of commerce within the rule of *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049].

In view of the underwhelming reception accorded *Becker* nationally and statewide, the Supreme Court recently revisited the issue in *Peterson*, which involved a plaintiff who was a hotel guest.[2] While taking a shower, the plaintiff fell on what she alleged was an "extremely slick and slippery" bathtub surface that was allegedly devoid of any safety measures. After conflicting rulings between the trial court and the Court of Appeal as to whether the *Becker* rule of strict liability should apply to hotel operators, review was granted. The salient holding by the Supreme Court was that *Becker* constituted "an unwarranted extension of the doctrine of products

---

[2] See *Peterson, supra*, 10 Cal.4th at pages 1192-1195, wherein the Supreme Court sets forth the difficulties with which *Becker* has been beset.

liability and should be overruled." (*Peterson, supra,* 10 Cal.4th at p. 1190.) The impact of the decision is to return California to the mainstream of judicial reasoning relative to this issue.

It should be noted, however, that the Supreme Court carefully limited *Peterson* to situations where the landlord or hotel proprietor was not involved in the construction process or the installation of the defective product. (*Peterson, supra,* 10 Cal.4th at p. 1200.) Further, the Supreme Court was silent on whether or not *Peterson* should be applied retroactively.

### b. *Reliance on the Becker Decision*

Based on *Moradi-Shalal*, appellant claims that when overturning a Supreme Court decision (as opposed to that of an intermediate appellate court), prospective application should be given. We agree with appellant that the Supreme Court's reversal of one of its own decisions rather than that of an intermediate appellate court is a factor when considering the appropriateness of retroactive application of a new rule of law. (*Newman v. Emerson Radio Corp., supra,* 48 Cal.3d 973, 986-987.) However, it is only one factor.

One of the few examples extant for the prospective (rather than retroactive) application of a judicial decision involved *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] and *Moradi-Shalal.* Insurance Code section 790.03, subdivision (h) sets forth claims settlement practices that are prohibited to an insurer. In *Royal Globe*, the Supreme Court held that section 790.03 created a private "bad faith" cause of action against an insurer by a third party. Nine years later, the Supreme Court rejected that holding in *Moradi-Shalal.* Recognizing the injustice that would be worked on the numerous third party "bad faith" cases that had been filed in reliance on *Royal Globe*, the Supreme Court expressly held that *Moradi-Shalal* would not apply to any suit filed before it became final. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, 305.)

Appellant asserts that the public (and particularly the legal community) relied on *Becker* for almost 10 years. However, the reliance on *Becker* was not the same as in *Royal Globe.* As will be discussed further in part 1.d., *post*, the crucial difference is that *Royal Globe* created a brand-new class of litigants who filed suit based solely on "bad faith" settlement tactics of insurance carriers. If *Moradi-Shalal* had been ordered to be fully retroactive, those plaintiffs with cases in existence would have had no other remedy on which to fall back. The same is not true with *Peterson.* After all, *Becker* simply added one cause of action to others already available to a plaintiff.

Full retroactivity would still allow a plaintiff to proceed against a property owner under general tort principles, as well as to proceed in strict liability against the manufacturer, distributor, or retailer of a defective product. (*Peterson, supra,* 10 Cal.4th 1185, 1189.)

Most importantly, appellant has no real argument that the parties actually relied on *Becker* when entering into a what is a run-of-the-mill, standard apartment lease. At best, her contention is that respondents incurred increased insurance premiums (due to potential claims based on strict liability), which were in turn passed along to appellant in the form of higher rent. We disagree that such a scenario encompasses the direct reliance with which the Supreme Court was so concerned in *Moradi-Shalal.* In day-to-day common events, " '[n]either the tortfeasor nor the victim normally takes account of expanding or contracting rules of tort liability except tangentially in the course of routinely insuring against such liability.' " (*Newman* v. *Emerson Radio Corp., supra,* 48 Cal.3d at p. 981, quoting Justice Traynor in 28 Hastings L.J. 545-546.)

### c. *Foreseeability of the Change in Law*

Appellant contends that when the Supreme Court took *Peterson* for review, there was no indication that it intended to overturn *Becker.* We disagree.

As then Associate Justice George pointed out, *Becker* stood virtually alone on the national legal landscape in its approach to the application of strict liability principles to residential landlords. (*Peterson, supra,* 10 Cal.4th at pp. 1192-1195.) In view of the consistent criticism of *Becker,* it is not surprising the Supreme Court would revisit the issue. Thus, when *Peterson* was taken on review in December of 1993, an alarm bell should have gone off inside the head of every plaintiff's lawyer who had or was contemplating suit based on strict liability for a defective product against a residential landlord or hotel owner. The appellate court in *Peterson* had held that *Becker* should logically be extended to encompass strict liability for hotel owners as well as residential landlords. If the Supreme Court had been satisfied with the soundness of *Becker,* there would have been little reason to grant review.

### d. *The Administration of Justice*

Appellant argues that it is not fair that she proceed all the way to the eve of trial and then have her strongest cause of action pulled out from under her. While it may not be totally fair, we do not find that the situation is so egregious as to warrant prospective application of *Peterson.*

We view this matter as akin to the situation presented in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373]. In that case, the Supreme Court reversed several intermediate appellate court decisions that had allowed tort relief for breach of the implied covenant of good faith and fair dealing in the setting of an employee suing an employer for wrongful discharge. The Supreme Court did not address whether its decision would be retroactive. It left that issue to a future case, which turned out to be *Newman* v. *Emerson Radio Corp.*, *supra*, 48 Cal.3d 973.

*Newman* involved a claim of wrongful discharge. One of the causes of action was for breach of the implied covenant of good faith and fair dealing. In the part of the holding that is germane to the appeal before us, the Supreme Court held that *Foley* was fully retroactive. The Supreme Court therefore reaffirmed the general principle of full retroactivity of its decisions. We find the reasoning of *Newman* fully dispositive of the question before us.

In *Newman*, the Supreme Court noted that the few examples of situations that required prospective applications were the exception rather than the rule. It stated that in such cases, the plaintiff had relied on the past rule of law in bringing the action and had no other viable theory of recovery against the defendant (as in *Moradi-Shalal*). (*Newman* v. *Emerson Radio Corp.*, *supra*, 48 Cal.3d at pp. 990-992.)

In the case before us, appellant was simply returned to remedies that existed under the law prior to *Becker*. She did indeed pursue those remedies against respondents based on the traditional theory of negligence and the not-quite-so-traditional theory of implied warranty of habitability. Assuming appellant's injuries were as serious as alleged, the litigation would have likely gone forward from its inception whether or not a cause of action for strict liability was feasible.

## 2. *Whether Retroactive Application Should Be Partial*

Appellant's final argument is that in view of her reliance on *Becker* in formulating her litigation strategy, the *Peterson* rule should not apply to cases that had already completed discovery. We again disagree.

From a procedural standpoint, the case before us is similar to *Newman.* In *Newman*, the plaintiff's entire complaint was dismissed on the eve of trial. The Court of Appeal affirmed in part and reversed in part. In accepting the matter for review, the Supreme Court asked the parties to address the impact of the just-decided *Foley* case.

The *Newman* decision shows that the Supreme Court went through a full analysis of the factors previously set forth in this opinion relative to the purpose of the new rule, reliance, forseeability of the change in law, and the impact of the new rule on the administration of justice. The court held that there was nothing unique about the facts in *Newman* which would justify a departure from the general rule. The Supreme Court concluded that *Foley* was to be accorded *full* retroactivity to all cases *not yet final* before *Foley* itself became final. (*Newman* v. *Emerson Radio Corp.*, *supra*, 48 Cal.3d at pp. 976, 993.)

We see no practical difference between the plaintiff in *Newman* and appellant. As in *Newman*, appellant was able to proceed on other causes of action. Just as there historically has been litigation between employees and employers over purportedly unjustified termination of employment, so has there historically been litigation between tenants and landlords (and guests and hotel owners) for injuries incurred on the premises. The pre-*Foley* cases did not spawn an entire new class of litigants. They only gave litigants a new cause of action. The same is true in the present appeal. *Becker* did not create a new class of litigants. It only gave potential litigants an additional cause of action. We hold that *Newman* is controlling on the issue of full retroactivity.

### DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

Fukuto, Acting P. J., and Zebrowski, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 12, 1997. Mosk, J., was of the opinion that the petition should be granted.