John AVILA, Plaintiff,

v.

The TRAVELERS INSURANCE COMPANIES, a corporation, Defendant.

No. CV 79–3074–RJK.

United States District Court,
C. D. California.

Dec. 3, 1979.

432

Avrum S. Harris, Los Angeles, Cal., for plaintiff.

Breidenbach, Swainston, Yokaitis & Crispo, Francis Breidenbach, Howard D. Swainston, Gregory D. Bistline, Los Angeles, Cal., for defendant.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, District Judge.

The Court has for determination the question of whether one or the other or both of defendant's motions, respectively, for judgment on the pleadings, or, in the alternative for summary judgment should be granted.

The motions are directed against plaintiff's claim for damages by reason of the asserted wrongful manner in which the defendant insurance company processed and settled the plaintiff's wrongful death claim against the defendant's then-assured.

The action is brought pursuant to this Court's diversity jurisdiction, and the substantive law of California is applicable.

The principal issue is whether the rule of law announced in a recent decision by the California Supreme Court should be applied retroactively to the defendant here. The issue raised is one which, in reason, ought properly to be first decided by a state court appellate tribunal. However, the law is clear that this Court cannot, under the doctrine of abstention, reason or otherwise, avoid its obligation to entertain the litigation and resolve the question of California law which is now presented.

A federal court is particularly reluctant to decide a novel question of state law when it is avoidable. In this case, however,

it is appropriate to do so. The state law question, though new, is commonplace. To address it here raises no federal constitutional issue (*Cf. Railroad Comm'n v. Pullman* (1941) 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971), nor any difficult question of extraordinary public import and sensitivity (*Cf. Louisiana Power and Light Co. v. Thibodaux* (1949) 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058). A federal court may not shy away from a state law question merely because it is unclear (*Meredith v. City of Winter Haven* (1943) 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9). We therefore proceed to address it.

On March 29, 1979, the Supreme Court issued its opinion in *Royal Globe Insurance Company v. Superior Court,* 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329, holding that a third party claimant has a private right of action against an alleged tort-feasor's insurance company for the insurance company's violation of the California Insurance Code by not attempting "in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." The plaintiff in the present case, John Avila, claims that the defendant, The Travelers Insurance Company, delayed settling his claim for more than two years after liability of the Travelers' insured had become reasonably clear, and seeks general and punitive damages for the delay.

The defendant has moved for summary judgment under Rule 56, and for judgment on the pleadings, on various grounds, and both sides submitted affidavits. The Court invited further memoranda on the retrospective effect of *Royal Globe,* and these were submitted.

Nearly all the pertinent facts occurred before the *Royal Globe* decision. On June 16, 1976, Mr. Avila's wife was killed when a bulldozer that was grading a roadway median punctured a subsurface gasoline line, causing an explosion and fire. Eight other people also died, many were injured, and much property was damaged.

On June 23, 1976, Mr. Avila filed a wrongful death suit in federal court against the owner of the pipeline (Standard Oil Company of California), the state authority conducting the roadwork (the California Department of Transportation), the general contractor (The Griffith Company), the subcontractor whose bulldozer struck the pipeline (C. W. Poss Company), and several other defendants. The subcontractor was insured by The Travelers up to an aggregate of $1,000,000. The federal action was dismissed on grounds not relevant here, and meanwhile essentially the same action had been refiled in the Los Angeles County Superior Court. Approximately 72 other suits involving 130 plaintiffs were also filed on account of the same disaster.

On January 31, 1977 the National Transportation Safety Board released its report on the accident. The report concluded that the cause of the accident was failure to ascertain the exact location of the gasoline line, whose existence was known to all. The responsibility for this omission, in the Board's view, was shared by the pipeline owner, the State Transportation Department, the general contractor, and the subcontractor. Mr. Avila claims that the subcontractor's liability became "reasonably clear" at the time this report was issued.

Efforts to settle followed. There is no real dispute in the affidavits about what occurred. The defendant's attorney asserts that the first specific settlement demand, for $100,000, was not made until July 3, 1978, and on the same day was reduced to $75,000. The $75,000 demand was repeated twice during September and a third time during a settlement conference in December. In April of 1979, the plaintiff at a mandatory settlement conference reduced his demand to $50,000, partly at the urging of Judges Crickard and Nye, the two settlement conference judges. This demand was accepted by the defendants a short time later, and the amount was paid. The $50,-000 settlement was apportioned among the defendants in a package that was, and by court order remains, confidential.

The plaintiff's attorney throughout this time, Mr. Friedman, does not dispute any of this in his affidavit, but asserts that during the eighteen months preceding the first set-

tlement demand he had "numerous" oral discussions with one of the attorneys representing The Travelers, who repeatedly told him that The Travelers was not interested in settling, and "you'll have to try your case." He intimates further (albeit by hearsay) that the other defendants were willing to join a settlement pool, but that The Travelers refused to join. He also charges that the same attorney for The Travelers "by a series of maneuvers" succeeded in delaying the deposition of the bulldozer operator until the spring of 1978. He was led to reduce his client's demand to $50,000, he states, because, unknown to the defendants, Mr. Avila had suffered a coronary seizure a short time before trial, and his survival was in doubt. He has since recovered.

The present suit was filed in August of 1979. In it, Mr. Avila seeks recovery from The Travelers on two separate theories: First, that The Travelers violated California Insurance Code § 790.03(h)(3), which proscribes, "[f]ailing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies"; second, that The Travelers violated California Insurance Code § 790.03(h)(5), which proscribes "[n]ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." He also pleads fraud, malice, and oppression and intentional infliction of emotional distress, on the same facts.

*The Royal Globe Case*

Mr. Avila's cause of action would not have been recognized before the *Royal Globe* case. That case interprets § 790 of the California Insurance Code. Section 790 was enacted in 1959. It enumerates certain practices declared to be unfair or deceptive acts or practices in the business of insurance (§ 790.03), and confers on the insurance commissioner powers to investigate, prosecute, and punish violations of its provisions through cease-and-desist orders and fines (§§ 790.04–790.08).

Subdivision (h) of § 790.03 was added by the legislature in 1972. It lists fifteen spe-

cific claims settlement practices. An insurer becomes guilty of improper conduct by "[k]nowingly committing or performing with such frequency as to indicate a general business practice" any of the fifteen. Two of the fifteen practices, (h)(3) and (h)(5), quoted above, are in issue in this case.

The statute also contains a provision, dating from 1959, providing that no enforcement proceeding by the commissioner against any person "shall in any way relieve or absolve such person from any administrative action against the license or certificate of such person, *civil liability* or criminal penalty under the laws of this State arising out of the methods, acts or practices found unfair or deceptive" (§ 790.09) (emphasis added).

California's Supreme Court, in the *Royal Globe* decision, held that this "civil liability" language shows the legislature's intent to create a private right of action in favor of injured claimants directly against insurance companies for violation of at least some of the fifteen prohibitions of subdivision (h). Such an action may be brought only after the underlying tort suit is concluded.

The insurance company petitioner in *Royal Globe* argued that the statute was meant to be enforced exclusively by the insurance commissioner, and that the "civil liability" language was only meant to preserve existing liability. It also argued that the language requiring "frequency" of violations so as to indicate a "general business practice" fortified its argument that enforcement was to be administrative only. It was joined in these unsuccessful arguments by the insurance commissioner, as amicus curiae.

*The Subdivision (h)(3) Cause of Action*

Before considering the retroactive effect of this decision, we consider one of the other legal issues raised by the defendant. The defendant contends that no cause of action exists in favor of a third-party claimant under subdivision (h)(3) and that *Royal Globe* did not create one. This portion of the complaint must therefore be dismissed, defendant argues, for failure to state a claim on which relief can be granted.

*Royal Globe*'s holding expressly extended the third-party cause of action to only two subparts of subdivision (h), namely, (h)(5) and (h)(14) (subpart . (h)(14)—advising a claimant not to get a lawyer—is not involved here). Yet the Court appears to have contemplated that the third party cause of action might be extended to other of the fifteen practices besides the two expressly involved in its holding: "[t]he subdivision by its own terms extends certain of its protections to claimants, some to insureds, and others to both claimants and insureds." (23 Cal.3d 880, 888, 153 Cal.Rptr. 842, 847, 592 P.2d 329, 334). While a number of examples are given, no hint is given on which category (h)(3) falls into, and the question is therefore one of first impression.

■ As a federal court sitting in a diversity case, this Court must ascertain and apply the California Court's interpretation of its legislature's intent. Allowing that the legislature intended to create third party rights of action for some of the subdivision (h) practices, it could not have intended (h)(3) to be one of them. Subpart (h)(3) deals with "claims arising under insurance policies." The only logical interpretation is that this refers to insureds' claims for coverage. The injured party's right of recovery does not "arise under" the insurance contract, or under any contract, but is imposed by law. He is not a third party beneficiary under the insurance contract. (*Murphy v. Allstate Ins. Co.,* (1976) 17 Cal.3d 937, 132 Cal.Rptr. 424, 553 P.2d 584.) The *Royal Globe* opinion itself recites that the third party rights of action it recognizes are not based on the insurance contract, but are "created by [the] statutory provisions and owed directly to plaintiff as a claimant" (23 Cal.3d 880, 889, 153 Cal.Rptr. 842, 848, 592 P.2d 329, 335). Applying that reasoning to (h)(3), the legislature could not plausibly have intended to impose a direct statutory duty by labeling it as "arising under insurance policies." The defendant's motion to dismiss with respect to the (h)(3) theory must be granted.

*Retroactivity*

The *Royal Globe* decision did not follow the recent practice of expressly spelling out the retroactive effect (e. g., *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226; *In re Marriage of Brown,* (1976), 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561). Therefore, whether the plaintiff's claim under (h)(5) may be applied retroactively to conduct occurring before *Royal Globe* is a question of first impression.

The *Royal Globe* opinion is founded on legislative intent. When the statute was passed in 1959, and amended in 1972, the Court reasoned, the legislature intended for third parties to sue. In strictest logic, therefore, the decision did not make any new law, but merely announced what the law had already been for a long time. On this logic, it would have to apply retroactively to the defendant here.

■ The same logic supports the general rule that decisions of the state's highest tribunal are ordinarily deemed retroactive. Courts do not make law, the theory goes, but merely declare what the correct law always was (see *Forster Shipbuilding Co. v. County of Los Angeles* (1960) 54 Cal.2d 450, 458, 6 Cal.Rptr. 24, 27–28, 353 P.2d 736, 739–740, and authorities collected there; Shaefer, 53 Cal.L.Rev. 11, 17; *County of Los Angeles v. Faus,* (1957) 48 Cal.2d 672, 680–81, 312 P.2d 680).

California, like all jurisdictions, recognizes an exception to the rule. The exception was long thought to be narrow and technical, applying only when specific contract or property rights had "vested" in reliance on the prior law (see *County of Los Angeles v. Faus* (1957) 48 Cal.2d 672, 312 P.2d 680; *Texas Co. v. County of Los Angeles* (1959) 52 Cal.2d 55, 338 P.2d 440) notwithstanding some much older decisions that applied the exception more broadly (e. g. *Campbell v. Rainey* (1932) 127 Cal.App. 747, 16 P.2d 310). By 1960, Justice Traynor on behalf of the Court observed that the retroactivity question was to be decided on "considerations of fairness and public policy," the existence of specific contract or

property rights no longer being controlling (*Forster Shipbuilding Co. v. County of Los Angeles,* 54 Cal.2d 450, 459, 6 Cal.Rptr. 24, 29, 353 P.2d 736, 741). (See also, *Bank of America v. Dept. of Mental Hygiene* (1960) 246 Cal.App.2d 578, 587, 54 Cal.Rptr. 899, 905, expressly holding· that non-retroactivity applies to "a liability imposed by law," not just to private agreements.)

"Fairness and public policy" remains the law of California, amplified by the guidelines of a number of recent cases. Parenthetically, California's law is consistent with, and in theory probably identical to, the U.S. Supreme Court's three-part approach for determining the retroactivity of federal decisions. (*Chevron Oil Co. v. Huson* (1971) 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–356, 30 L.Ed.2d 296, 306)[1].

Under the heading of "fairness," the California Supreme Court has amplified as follows: "Two factors of primary importance in resolving the issue of retroactivity are the extent to which the change in the law was foreshadowed and foreseeable and the extent of the reliance placed on the former rule of law." (*Barber v. State Personnel Board* (1976) 18 Cal.3d 395, 400, 134 Cal. Rptr. 206, 208, 556 P.2d 306, 308). Thus, for example, new law will be made retroactive when it was foreshadowed by a prior federal constitutional decision on the same issue (*Barber, supra*); or when the California Supreme Court had two years earlier announced its intention to "reconsider" the old rule (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561); or when there has been a "steady expansion" in the direction of the new rule (*Connor v. Great Western Savings and Loan Ass'n* (1968) 69 Cal.2d 850, 73 Cal.Rptr. 369, 447 P.2d 609). Conversely, new law will be applied prospectively only if it was "not realistically foreseeable" (*Barber, supra*); or if there have been "significant personal,

financial, and civic decisions" made in reliance on the old rule (*Westbrook v. Mihaly* (1970) 2 Cal.3d 765, 87 Cal.Rptr. 839, 471 P.2d 487); or if the parties have made a contract with "no reason to suspect" that its provisions would later be declared unlawful (*Mitchell v. National Automobile & Cas. Co.* (1974), 38 Cal.App.3d 599, 113 Cal. Rptr. 391).

We now apply these principles to the present case. The *Royal Globe* decision was as abrupt and surprising a reversal of the common understanding of prior law as is possible. The pre-*Royal Globe* decisions held it to be "fundamental" that the insurer's duty to settle was owed to the insured alone, and that no such duty was owed to the injured third party (*Zahn v. Canadian Indem. Co.* (1976) 57 Cal.App.3d 509, 129 Cal.Rptr. 286; *Spencer v. State Farm Auto Ins. Co.,* (1957) 152 Cal.App.2d 797, 313 P.2d 900). As recently as 1976, the California Supreme Court considered a variety of statutory and common law theories on which such a duty might be extended to a third-party claimant, and rejected them all, saying "the duty to settle is intended to benefit the insured and not the injured claimant" (*Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 944, 132 Cal.Rptr. 424, 428, 553 P.2d 584, 588). This case was not overruled by *Royal Globe,* but was distinguished on the ground that the claimant there had not relied on this particular statute (23 Cal.3d 880, 888, 153 Cal.Rptr. 842, 848, 592 P.2d 329, 336).

Less than a year before *Royal Globe,* California's Court of Appeals rejected a third-party claimant's assertion of precisely the same statutory theory that was adopted in *Royal Globe,* finding the proposition "rather startling" (*Scheuch v. Western World Ins. Co.* (1978) 82 Cal.App.3d 31, 36,

---

1. "In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshad- owed . . . . Second, it has been stressed that 'we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' . . . Finally, we have weighed the inequity imposed by retroactive application . . . ."

145 Cal.Rptr. 294, 297). (A rehearing was recently granted in this case, perhaps as a result of *Royal Globe.*) That Travelers might owe Mr. Avila a duty to settle was plainly not "realistically foreseeable" during the time of the complained of conduct.

The plaintiff points out that the defendant was on notice since 1972 that the practices complained of were illegal, and it should not escape liability merely because an added sanction has become recognized. This argument might be persuasive if the claimant's private right of action were nothing more than an incremental change in the existing scheme of sanctions. Realistically, though, it is a fundamental change in the nature of the insurer's obligations. The Travelers owed C. W. Poss Co. the highest duty of good faith and fair dealing (*Silberg v. California Life Ins. Co.* (1974) 11 Cal.3d 452, 113 Cal.Rptr. 711, 521 P.2d 1103). The accident was a catastrophe, and there was a large number of claimants against a limited fund. Liability among the four principal defendants was in dispute. The Travelers was under a duty to its insured to attempt to settle within the policy limits (*Crisci v. Security Co. of New Haven, Conn.* (1967) 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173). Proper exercise of this duty under all the circumstances necessarily requires deliberation. Protecting the insured thus conflicts with the duty to the claimant to settle quickly. *Royal Globe* requires insurers to reconcile conflicting duties owed to two adversaries, on the very matters on which they are adversary. This may be done when the duties are known, but is impossible when one of them was not realistically foreseeable, and when, in fact, the existing law expressly said otherwise.

The *Royal Globe* opinion is not explicit on what public policies are being advanced. We assume they are to gain prompt compensation of injured persons, encourage settlements, and discourage litigation. Insurers may not sit back and relax simply because court congestion shields them for a time. No doubt the potential of *Royal Globe* liability will be an additional bargaining point in settlement talks, perhaps giving impetus to prompter settlements.

Of these purposes, only compensation is advanced by retroactivity. But to allow retroactive compensation would, in practical effect, "reopen controversies long settled by final judgment" (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 850, 126 Cal.Rptr. 633, 641, 544 P.2d 561, 569). We do not believe that California's Supreme Court, or its legislature, intended this, and conclude that The Travelers cannot be held liable for any conduct occurring before the *Royal Globe* decision was issued.

*Defendant's Bad Faith*

In addition to the grounds discussed here, defendant sought judgment on the grounds that, as a matter of law, the NTSB report did not make liability "reasonably clear" and, even if it did, the affidavits establish that no unfair settlement practices occurred. Consideration of whether liability was reasonably clear is unnecessary in view of the disposition on other grounds.

■ The Court does consider, assuming liability was reasonably clear, whether the plaintiff has raised any genuine triable issue as to the defendant's bad faith. The plaintiff's lawyer's assertion about a "series of maneuvers" to delay the bulldozer operator's deposition is meaningless. California's law provides ample means to compel the attendance of a witness at a deposition, with or without the opposing party's consent, including means of defeating any "maneuvers", (see Cal.Code Civ.Proc. §§ 1991.1, 1992, 2019(a)(4), 2034(d)). Also, the "series of maneuvers" epithet does not satisfy the "specific fact" requirement of Rule 56(e). The assertions about an incipient settlement "pool" are inadmissible hearsay. They do not seem to have any independent significance anyway, apart from delay generally.

■ This leaves only the matter of the delay itself. Plainly, an insurance company can no longer delay just to hang onto the money a little longer, or even out of indolence. Had the plaintiff made his $50,000 demand early on, and had it been rejected, only to be accepted on the eve of trial, there would be a suspicion of bad faith. But the

plaintiff made no such demand. Does he raise an inference of bad faith sufficient to get to trial by merely asserting that settlement took over two years? It seems not. First of all, in a multiple party disaster case, there are many plausible reasons for delay besides bad faith. Second, and more important here, this is an unusual summary judgment motion in that all the pertinent facts are within the personal knowledge of the parties' various attorneys. They would be principal witnesses at trial. It is difficult to imagine what additional evidence could be offered at trial that could not be offered by affidavit. No doubt the plaintiff would seek to discover and present evidence on the defendant's subjective state of mind, a prospect that would raise interesting questions involving the work product and attorney client privileges. But the pie-in-the-sky prospect of uncovering some kind of "smoking gun" on the defendant's side is not enough to let the case proceed. We can assume that the attorneys have presented the facts as fully and strongly as they could at trial. There is no conflict in the affidavits as to any evidentiary fact. Accepting everything the plaintiff alleges as true, he has raised no genuine issue of bad faith, and therefore the defendant is entitled to summary judgment as a matter of law on this ground alone.