[Civ. No. 21719. Third Dist. Sept. 6, 1983.]

GARY ALAN SCHLAUCH, Plaintiff and Appellant, v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY,
Defendant and Respondent.

COUNSEL

Friedman, Collard, Poswall & Thompson and Allan J. Owen for Plaintiff and Appellant.

Meadows, Dorris, Stryker & Salentine, John F. Meadows and J. Mark Foley for Defendant and Respondent.

## OPINION

**SPARKS, J.**—In this case of first impression, we hold that the decision in *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329], is retroactive. We further hold that a claimant who settles with some tortfeasors and then recovers a net judgment of zero against other insured tortfeasors is not precluded by that judgment from bringing a bad faith suit against the breaching insurance carrier. Finally, we also hold that although a subsequent tender of the policy does not cure an earlier bad faith breach, it does serve to mitigate damages.

Plaintiff Gary Alan Schlauch appeals from a judgment of dismissal entered after the trial court sustained without leave to amend the demurrer of defendant The Hartford Accident & Indemnity Company (Hartford). Plaintiff had sought recovery for the alleged bad faith of Hartford in investigating and settling a claim against its insureds who were defendants in a prior personal injury action brought by plaintiff. It appeared that plaintiff had recovered a net judgment of zero dollars against Hartford's insureds in his personal injury action. It further appeared that the facts which were alleged to have constituted bad faith occurred before the Supreme Court's decision in *Royal Globe.* The trial court sustained Hartford's demurrer on the grounds that a net judgment of zero dollars precludes a bad faith action against an insurer as a matter of law, and that the *Royal Globe* decision should not be applied to conduct which took place before its effective date. For reasons we shall explain, we reverse and remand for further proceedings.

### FACTS

Since this appeal follows the sustaining of a demurrer we must accept as true the properly pleaded allegations of plaintiff's first amended complaint. (*Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 746 [167 Cal.Rptr. 70, 614 P.2d 728]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032]; see generally, 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 800, p. 2413.) For a first cause of action plaintiff alleged that during October 1978 Hartford had in effect a homeowner's insurance policy for $100,000 issued to Robert W. Boal and his wife Lillian as named insureds. The policy, by its definitional terms, also

included their son Bruce as an insured. On October 27, 1978, Bruce Boal held a Halloween party at his parents' house which was attended by plaintiff as well as Kenneth J. Ripper, Jr., and Charles Joseph Sagadin. The Boals, it is alleged, knew plaintiff, Ripper and Sagadin were minors, but nevertheless negligently served alcohol to them knowing they would become, or were already, intoxicated. The Boals then allowed the minors to leave the party knowing they would operate a motor vehicle while intoxicated. Plaintiff, Ripper and Sagadin were involved in a single car accident later that evening when the vehicle overturned and all three minors suffered severe personal injuries due to the negligence of the Boals. As a result of those injuries, plaintiff became a permanent quadriplegic.

On November 15, 1978, 18 days after the accident, Ripper filed personal injury actions against the Boals and other parties.[1] On December 15, 1978, less than two months after the accident, the three minors made a joint demand upon Hartford for the full amount of the policy limits in the amount of $100,000. Plaintiff alleges that although liability was clear and the damages were far in excess of the policy limits, Hartford failed and refused to tender the policy limits. Thereafter, Hartford filed an interpleader action on July 2, 1980, tendered the full policy and attempted to obtain a stay of the personal injury action against the Boals, which was denied.

Plaintiff pursued his personal injury action against the Boals, and obtained a jury verdict of $1,249,136. That amount was less than plaintiff had received in settlement from other defendants, and a net verdict was entered in plaintiff's favor for zero dollars plus costs.[2]

As a second cause of action plaintiff alleged that Hartford had engaged in the following unfair claims settlement practices: (1) misrepresenting the pertinent facts or insurance policy provisions to the claimants (Ins. Code, § 790.03, subd. (h)(1); (2) failing to acknowledge and act reasonably promptly upon communication with respect to claims (Ins. Code, § 790.03, subd. (h)(2)); (3) failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under a policy; (Ins. Code, § 790.03, subd. (h)(3); (4) failing to confirm or deny coverage within a reasonable time of a claim (Ins. Code, § 790.03, subd. (h)(4); and

---

[1] Plaintiff filed a similar action against the same defendants on February 7, 1979, and Sagadin filed his personal injury action on July 16, 1979.

[2] Code of Civil Procedure section 877 requires that a plaintiff's claims against other tortfeasors must be reduced by the amounts paid in good faith by the settling tortfeasors. (*Jaramillo* v. *State of California* (1978) 81 Cal.App.3d 968, 970-971 [146 Cal.Rptr. 823].) Since plaintiff recovered more by settlement than he did at trial against the Boals, that settlement reduced his judgment to zero by operation of law.

(5) not attempting in good faith to effectuate prompt, fair and equitable settlement (Ins. Code, § 790.03, subd. (h)(5)).

As a third cause of action plaintiff alleged that the acts complained of were done unreasonably, outrageously and with the intention of inflicting severe emotional distress on plaintiff. He sought general, special and punitive damages in all three causes of action.

The trial court sustained Hartford's demurrer and plaintiff appeals from the subsequent order dismissing his action.

### DISCUSSION

Initially we emphasize that plaintiff disclaims any attempt to state a cause of action under the common law obligation to settle imposed upon an insurer by the contractual duty of good faith and fair dealing. Such a disclaimer is quite proper. ■ "Case law has established the proposition that an insured who has suffered damages in excess of an insurance policy as a consequence of an insurer's bad faith failure to settle a claim may sue the insurer for breach of contract." (*Doser* v. *Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883, 890 [162 Cal.Rptr. 115].) Under settled principles, however, the insurer's duty to settle runs to the insured and not to the injured claimant. Consequently Hartford owed no common law duty to plaintiff. (*Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 940-941 [132 Cal.Rptr. 424, 553 P.2d 584].) ■ Although the insured may assign his cause of action against the insurer for its breach of the duty to settle (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 661-662 [328 P.2d 198, 68 A.L.R.2d 883]), he cannot assign the personal tort aspect of that bad faith cause of action because that aspect is not assignable in California. (*Murphy* v. *Allstate Ins. Co., supra,* 17 Cal.3d at p. 942.) Consequently, to the extent that plaintiff seeks damages against Hartford for emotional distress and punitive damage those damages could not have been predicated upon an assignment by the insureds. Moreover, the net zero judgment meant that the Boals did not suffer any legal detriment or damage and hence had no present cause of action to assign to plaintiff. (*Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142].)[3]

---

[3]As we noted in *Critz,* "[a] finding of completed breach, however, would not endow the policyholder with an immediately enforceable chose in action against the insurer. Uncertainty as to the fact of damage negatives existence of a cause of action. The fact of damage would become fixed and the policyholder's cause of action arise when he incurred a binding judgment in excess of the policy limit." (230 Cal.App.2d at p. 799, citations omitted.) A valid cause of action must exist in the insured-assignor before an assignee can prevail against the insurer (*Doser* v. *Middlesex Mutual Ins. Co., supra,* 101 Cal.App.3d 883, 890), and

Accordingly, we are concerned here with the first amended complaint only insofar as it alleges a cause of action under the decision in *Royal Globe.*

I

Insurance Code section 790.03, subdivision (h), the claims settlement provision of California's Unfair Practices Act (Ins. Code, § 790 et seq.) lists a number of unfair settlement practices which constitute unfair methods of competition or unfair and deceptive acts or practices in the business of insurance.[4] In *Royal Globe,* the Supreme Court considered whether a pri-

---

that cause of action does not arise until the insured suffers a judgment in excess of the policy limits.

Although common law and statutory rules against assignment of expectations (see e.g., Civ. Code, § 1045), prevent the transferee from immediately asserting his claim, the attempted transfer of a future right arising out of the breach of the insurer's duty to settle in good faith operates as an "equitable assignment or contract to assign, which becomes operative as soon as the right comes into existence." (*Critz* v. *Farmers Ins. Group, supra,* 230 Cal.App.2d at p. 799.)

Theoretically, the settling tortfeasors could also sue the Boals for equitable contribution. (*Teachers Insurance Co.* v. *Smith* (1982) 128 Cal.App.3d 862 [180 Cal.Rptr. 701].) But once again, until the insureds incurred a binding judgment in excess of the policy limit, they have an incomplete claim against the insurer and hence no present cause of action to assign.

[4]Insurance Code section 790.03, subdivision (h) prohibits: "(h) Knowingly committing or performing with such frequency as to indicate a general business practice any of the following unfair claims settlement practices: [¶] (1) Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverage at issue. [¶] (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies. [¶] (3) Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies. [¶] (4) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured. [¶] (5) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. [¶] (6) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered. [¶] (7) Attempting to settle a claim by an insured for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application. [¶] (8) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of, the insured, his representative, agent, or broker. [¶] (9) Failing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment has been made. [¶] (10) Making known to insureds or claimants a practice of the insurer of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration. [¶] (11) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either, to submit a preliminary claim report, and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information. [¶] (12) Failing to settle claims promptly, where liability has become apparent, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. [¶] (13) Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a

vate litigant (i.e., one not a party to the insurance contract) may bring an action against an insurer to impose civil liability for violations of section 790.03, or whether the Insurance Commissioner has the sole authority to enforce its terms. The court held that such a third party claimant may sue an insurer for violating section 790.03, subdivision (h).[5] (23 Cal.3d at p. 884.) The court concluded further that the duty imposed under section 790.03 runs directly to a claimant and is not dependent upon a violation of an insurer's duty to its insured. (*Id.*, at p. 890.)

■ We must first consider whether the decision in *Royal Globe* applies to conduct of an insurance company which occurred before the effective date of the decision since in this case the alleged violations occurred before that date. ■ "Overruling decisions, especially in the tort field, are normally applied retroactively unless there has been great public reliance on the earlier rule, the new rule was nowhere foreshadowed, and it would be unfair to apply the rule retrospectively. [Citations.]" (*Busboom* v. *Superior Court* (1980) 113 Cal.App.3d 550, 553 [169 Cal.Rptr. 886]; see also *Long* v. *Pinto* (1981) 126 Cal.App.3d 946, 949 [179 Cal.Rptr. 182].)[6] The res-

---

compromise settlement. [¶] (14) Directly advising a claimant not to obtain the services of an attorney. [¶] (15) Misleading a claimant as to the applicable statute of limitations."

Finding the phrase "Knowingly committing or performing with such frequency as to indicate a general business practice" to be ambiguous, the court in *Royal Globe* further held that "a single violation knowingly committed is a sufficient basis for such an action." (*Id.*, at p. 891.)

All further statutory references are to the Insurance Code.

[5]The court holding is technically stated as follows: "We hold that a third party claimant may sue an insurer for violating subdivisions (h)(5) and (h)(14) [of section 790.03 of the Insurance Code], but that the third party's suit may not be brought until the action between the injured party and the insured is concluded." (*Ibid.*) Since each subsection of section 730.03, subdivision (h) describes "unfair claims settlement practices," there is no reason to believe that actions against insurers will be limited to violations of subdivision (h)(5) and (h)(14). As the Supreme Court noted elsewhere in its opinion, earlier appellate decisions "make it clear, therefore, that private litigants may rely upon the proscription set forth in the act as a basis for the imposition of civil liability upon an insurer." (23 Cal.3d at p. 886.) But see *Avila* v. *Travelers Ins. Companies* (C.D.Cal. 1979) 481 F.Supp. 431, 435, holding that section 790.03, subdivision (h)(3), which deals only with "claims arising under insurance policies," refers only to claims by an insured and not to those of third parties.

[6]Although it may be argued that *Royal Globe* was not technically an "overruling decision," it did recognize a civil cause of action where none had been recognized before and the considerations as to retroactivity would be the same. It is the establishment of "a new principle of law, either by overruling clear past precedent on which litigants may have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed, . . ." that poses a question of retroactivity. (*Chevron Oil Co.* v. *Huson* (1971) 404 U.S. 97, 106 [30 L.Ed.2d 296, 306, 92 S.Ct. 349].) Consequently, "[t]he judicial act of overruling includes, for the purposes of [retroactivity] analysis, those cases wherein the California Supreme Court set aside a rule pronounced in an earlier case as well as those cases wherein the court's opinion makes a 'clear break' from non-Supreme Court law, whether established in the lower courts, in statute, or in some other source." (Perrello & Golembiewski, *Retroactivity of California Supreme Court Decisions: A Procedural Step Toward Fairness* (1981) 17 Cal.Western L.Rev. 403, 422, fn. 116.)

olution of the issue turns primarily upon the extent of the public reliance upon the former rule and the ability of the litigants to foresee the coming change in the law. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 193 [98 Cal.Rptr. 837, 491 P.2d 421].)

After applying this standard to the instant case we are convinced that the decision in *Royal Globe* should be applied to facts which occurred before its effective date. As noted by the Court in *Royal Globe,* the duties imposed upon an insurer under section 790.03, subdivision (h) were imposed with the addition of that subdivision in 1972. (*Royal Globe, supra,* 23 Cal.3d at p. 885.) The decision in *Royal Globe* was thus merely a change in remedy of enforcing the duty of an insurer, and not a change in the duty itself, and consequently the argument that it would be unfair to apply *Royal Globe* retroactively must be rejected. (See *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 162 [181 Cal.Rptr. 784, 642 P.2d 1305].) Moreover, since insurers were statutorily prohibited from engaging in these unfair practices, they can claim no reliance upon the lack of legal authority for third party damages suits. In short, insurance carriers had fair warning that their conduct was prohibited.

The question whether the liability imposed by the decision in *Royal Globe* could have been foreseen is answered by the decision itself. The court, as we have noted in the margin, emphasized that several recent decisions had imposed civil liability upon an insurer for violations of the Unfair Practices Act (Ins. Code, § 790 et seq.), and concluded "[t]hese well-reasoned authorities make it clear, therefore, that private litigants may rely upon the proscriptions set forth in the act as a basis for the imposition of civil liability upon an insurer." (*Royal Globe, supra,* 23 Cal.3d at pp. 885-886.) Since the decision in *Royal Globe* did not impose a new duty upon insurers, but only provided a different means of enforcement, and should have been foreseen, we hold that the decision should be applied retroactively.[7]

II

It remains to be determined whether plaintiff has stated a cause of action under *Royal Globe*. Hartford argues that a net zero judgment pre-

---

[7]We have considered and decline to follow the decision to the contrary of the federal trial court in *Avila* v. *Travelers Ins. Companies* (C.D.Cal. 1979) 481 F.Supp. 431, 436-437, relied upon by Hartford. Our review of the California decisions concerning the retroactivity of judicial decisions compels us to disagree with the conclusion reached in *Avila*. We also note that *Avila* was affirmed on appeal for the failure to establish a cause of action, and the appellate court expressly reserved opinion on retroactivity. (*Avila* v. *Travelers Ins. Co.* (9th Cir. 1981) 651 F.2d 658.)

cludes a cause of action against it, while plaintiff urges that the amount of the judgment and the belated tender of the policy are irrelevant. We find neither contention persuasive.

According to plaintiff's argument, an insurer, having once failed to accept a settlement offer, must thereafter finance plaintiff's litigation against the insured and stand ready to pay any excess judgment as well as other claimed damages, despite the fact that policy limits were later offered and refused. To state the argument is to reject it because it violates too many policies of this state. Such a holding would foster litigation in violation of the strong policy in favor of settlement. (*American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 603-604 [146 Cal.Rptr. 182, 578 P.2d 899].) Further, such a holding would ignore plaintiff's duty to mitigate damages, and preclude the insurer from any possibility of avoiding additional damages by rectifying its earlier wrong. These factors, plus the manifest injustice of plaintiff's position, compel its rejection.

We must reject Hartford's argument as well. According to that argument an insurer may wilfully violate its statutory duties to a claimant, and yet may escape liability by the fortuity that other tortfeasors settled in an amount equal to or greater than the subsequently proven damages. Such a result bears little relationship to the wrong committed and would encourage unfair practices in some multiple carrier cases.

We believe this question must be resolved on another ground. Simply stated, we do not find in *Royal Globe* or in Insurance Code section 790.03, subdivision (h), any intention to remove proximate cause from the breach of a statutory duty. ■ While Hartford had a duty to protect its insured from an excess judgment, it had no duty to either its insured or third party claimants to settle for any amount in excess of the policy limits. Its settlement duty to the insureds and claimants alike was limited to the policy limits. (See *National Life & Accident Ins. Co.* v. *Edwards* (1981) 119 Cal.App.3d 326, 339-340 [174 Cal.Rptr. 31]; *Aetna Casualty & Surety Co.* v. *Superior Court* (1980) 114 Cal.App.3d 49, 58 [170 Cal.Rptr. 527].) If Hartford's initial refusal to tender its policy limits to the three minor claimants violated its statutory duties, that violation ceased when it subsequently tendered those limits. Plaintiff's subsequent decision to pursue his cause of action against the Boals cannot be considered to have been caused by Hartford's breach of its duties to plaintiff. To hold otherwise would preclude an insurer from rectifying an initial failure and impose upon it unlimited liability for the plaintiff's subsequent actions.

■ While we hold that an insurer may correct an initial failure and will not be liable for damages a claimant incurs thereafter, we decline to hold

that all liability and damages for a breach of duty may be cured by a subsequent offer of settlement. To accept such an argument would permit the intentional violation of the duties owed by an insurer to a claimant, so long as a tender was ultimately made before final judgment. As we noted in the context of a breach of the implied covenant of good faith suit, "[e]ven if the insurer attempts to resume negotiation by a belated offer of the policy limit, that action does not necessarily relieve it of the onus of an earlier bad faith rejection." (*Critz* v. *Farmers Ins. Group, supra,* 230 Cal.App.2d at p. 798.) That rule, subject to the doctrine of mitigation of damages, should also apply to *Royal Globe* suits. We therefore hold that a claimant may recover damages which accrue before the insurer rectifies an initial violation of duties under Insurance Code section 790.03.

When we apply these principles to the first amended complaint, we conclude that the pleading was demurrable. Plaintiff there sought all costs of discovery, attorneys' fees, related costs of litigation, and damages for the emotional distress due to prosecuting his action against the Boals, both before and after the tender of the policy. All those damages cannot be held to have been caused by the alleged breach of Hartford's duty to plaintiff. We hold, however, that the complaint may be amended to assert damages which accrued before Hartford rectified its alleged wrongdoing by tendering its policy limits. Accordingly the demurrer should not have been sustained without leave to amend.

We finally note one additional flaw in plaintiff's pleading. The third cause of action simply asserts that Hartford acted outrageously and with intent to inflict emotional distress. ■ The failure to accept an offer of settlement or the violation of statutory duties under Insurance Code section 790.03 does not in itself constitute the type of outrageous conduct which will support a cause of action for intentional infliction of emotional distress. (See *Ricard* v. *Pacific Indemnity Co.* (1982) 132 Cal.App.3d 886, 894 [183 Cal.Rptr. 502]; *Beckham* v. *Safeco Ins. Co. of America* (9th Cir. 1982) 691 F.2d 898, 904.) The demurrer was properly sustained on the third cause of action without regard to the remainder of our discussion. If plaintiff is to state a cause of action on amendment of the pleadings he must allege with greater specificity the acts which are " 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' " (*Ricard* v. *Pacific Indemnity Co., supra,* 132 Cal.App.3d at p. 894.)

The order of dismissal is reversed and the cause is remanded to the trial court with directions to vacate its order sustaining the demurrer without leave to amend and to enter a new order sustaining the demurrer with leave

to amend the complaint in accordance with the views expressed in this opinion.

Regan, Acting P. J., and Sims, J., concurred.