173 Cal.App.3d 321 (1985)
220 Cal. Rptr. 692
ALISON RAE SYCH, a Minor, etc., Plaintiff and Appellant,
v.
INSURANCE COMPANY OF NORTH AMERICA et al., Defendants and Respondents.
Docket No. B003996.
Court of Appeals of California, Second District, Division Six.
October 15, 1985.
*323 COUNSEL
Lewis Graham for Plaintiff and Appellant.
Wise & Nelson, Wise, Wiezorek, Timmons & Wise, Anthony F. Wiezorek, Richard P. Dieffenbach, Greines, Martin, Stein & Richland, Kent L. Richland and Alan G. Martin for Defendants and Respondents.
OPINION
STONE, P.J.
May a plaintiff who, at trial, fails to prove an insured defendant's liability subsequently sue the defendant's insurers for unfair practices in not attempting, in good faith, to settle the case once liability to plaintiff is "reasonably clear"? It may not. We affirm the judgment of dismissal.
Minor, Alison Rae Sych, by and through Marianne Sych, mother and guardian ad litem, appeals the trial court's sustaining demurrers of Insurance Company of North America (INA) and Pacific Indemnity (Pacific), *324 without leave to amend, on grounds that plaintiff could not state a cause of action for unfair practices, restraint of trade, declaratory relief and violations of Insurance Code section 790.03.[1]

FACTS
Material complaint allegations are: from December 18, 1969, to and including June 2, 1970, Constantine S. Innes, M.D., ministered to Marianne Sych who was pregnant with appellant. June 2, 1970, Marianne Sych gave birth to appellant two months prematurely; appellant had cerebral palsy and hyaline membrane disease.
Appellant filed suit against Doctor Innes claiming professional negligence by inducing labor prematurely. After discovery proceedings, appellant demanded policy limits from INA and Pacific, response due by June 1, 1977. Included therewith were numerous newspaper articles advising of verdicts that juries had rendered in cases judged by her to be similar to that of Sych v. Innes, "all being in excess of 3.3 million." Appellant indicated to INA and Pacific that "(i)t seems quite clear that the total claim of Alison Sych far exceeds the alleged limits of the carriers' liability and failure to settle at this time might subject Alison Sych to unwarranted emotional distresses. It would appear that good faith under the circumstances would require the insurance carriers ... to accept the foregoing offer to settle."[2] Pacific, primary carrier, had policy limits of $300,000; INA, excess liability carrier, had policy limits of $1 million. Appellant received no correspondence nor offer of settlement until April 19, 1979, close to the trial setting and mandatory settlement conference date. April 13, 1979, Pacific informed appellant its policy limits were available for settlement, and, at the settlement conference, INA offered the following structured settlement:

$150,000 cash for fees & expenses $ 150,000
$ 10,000 per year to age 18 $ 90,000
$ 25,000 lump sum at age 18 $ 25,000
$ 15,000 per year from age 18 for remainder of life $ 915,000

Appellant told Pacific it would accept the $300,000 as "credit" against eventual judgment in exchange for releasing Pacific from excess liability for "bad faith." Pacific refused to pay without complete settlement, contending it to be contrary to its client's interest and bad faith to the excess *325 carrier. Appellant refused INA's offer. INA made a second offer July 11, 1979:

$ 10,000 to age 18 $ 90,000
$ 25,000 cash at age 18 $ 25,000
$ 15,000 compounded at 3% annually from age 18 $ 3,459,000
$225,000 attorney fees expenses $ 225,000
$ 50,000 to guardian ad litem $ 50,000

Appellant refused any structured settlement and told INA its proffers were not "good faith" offers. January 4, 1980, the case came to trial. The insurers offered $600,000 cash, which appellant rejected as untimely. The jury returned an unanimous verdict for the defense. Appellant appealed from that judgment which was affirmed, and remittitur issued February 7, 1983.
Appellant then filed this action, alleging that Doctor Innes' malpractice carriers were in bad faith in failing to settle the underlying action based upon facts discussed infra. Appellant repleaded the alleged negligence of Doctor Innes, damages and violations of Insurance Code section 790.03, subdivisions (b), (c), and (h), i.e., respondents: (1) made untrue, deceptive and misleading statements with respect to the business of insurance; (2) entered into an agreement to commit, and did commit, an act of boycott, coercion and intimidation resulting in unreasonable restraint of trade; (3) failed to adopt and implement reasonable standards for prompt investigation and processing of claims; (4) failed to attempt, in good faith, to effectuate prompt, fair, and equitable settlements of claims in which liability had become reasonably clear, and "compelled Plaintiff ... to institute litigation and litigate to recover amounts due Plaintiff under said insurance policies by offering substantially less than the amounts ultimately recovered in said action ... when Plaintiff made claim for amounts reasonably similar to the amount ultimately recovered ... in said litigation;" (5) attempted to settle for amounts less than a reasonable man would believe he was entitled to "by reference to written and printed advertising material accompanying and made part of the claim and application;" (6) failed to settle where liability had become apparent; and (7) failed to provide promptly a reasonable explanation of facts and applicable law for denial of the claim. Appellant also included a request for declaratory relief.
Respondents demurred to the complaint on grounds it failed to state a cause of action under Insurance Code section 790.03, based on the jury's verdict in the underlying action exonerating Doctor Innes, and, additionally, that appellant's claim for declaratory relief sought only retrospective rather than prospective relief.
The court permitted amendment by interlineation that "liability to Dr. Innes [sic] to plaintiff had become reasonably clear," held appellant had *326 failed to state a cause of action, sustained the demurrers without leave to amend, and pursuant thereto, entered judgment in favor of respondents.

DISCUSSION
(1) A demurrer admits all material and issuable facts properly pleaded, (Daar v. Yellow Cab Co. (1967) 67 Cal.2d 695, 713 [63 Cal. Rptr. 724, 433 P.2d 732]) but it does not admit contentions, deductions or conclusions of fact or law alleged therein. (Ibid.) (2) Similarly, the reviewing court accepts factual allegations as true. (State Farm Fire & Casualty Co. v. Cooperative of American Physicians, Inc. (1984) 163 Cal. App.3d 199 [209 Cal. Rptr. 251]; Carr v. Warden (1984) 159 Cal. App.3d 1166 [206 Cal. Rptr. 162].) (3a) Although appellant's shotgun pleadings encompass different subdivisions of section 790.03, the apparent gravamen lies in subdivision (h)(5) which defines unfair methods of competition and unfair and deceptive acts or practices in the business of insurance as "(n)ot attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."[3]
In Royal Globe Ins. Co. v. Superior Court (1979) 23 Cal.3d 880, 884 [153 Cal. Rptr. 842, 592 P.2d 329], the California Supreme Court held, for the first time, that an injured third party may sue the insurer of a negligent party for damages resulting from violating duties imposed by section 790.03, subdivisions (h)(5) and (h)(14). Previously, a third party claimant, who recovered a judgment against an insured in excess of policy limits but who had not obtained assignment of the insured's cause of action, could not sue the insurer for breach of duty to settle. (Id., at p. 889; Murphy v. Allstate Ins. Co. (1976) 17 Cal.3d 937 [132 Cal. Rptr. 424, 553 P.2d 584].) (4) The Supreme Court in Royal Globe, however, held that a third party claimant may not initiate suit until action between the injured party and insured has been "concluded." (23 Cal.3d at p. 884.) It explained that: (1) joint trial would violate the letter and spirit of Evidence Code section 1155 (evidence of insurance inadmissible to prove negligence or wrongdoing); (2) unless trial of the insured is postponed until liability of the insured is first determined, the insured's defense may be seriously hampered by discovery initiated by the injured claimant against the insurer, and (3) the injured party's damages caused by the insurer's violation of subdivisions (h)(5) and (h)(14) "may best be determined after the conclusion of the action by the third party claimant against the insured." (Pp. 891-892.)
Cases first interpreted "concluded" as final judgment establishing the insured's liability. (Cf. Nationwide Ins. Co. v. Superior Court (1982) 128 *327 Cal. App.3d 711, 714 [180 Cal. Rptr. 464].) However, the appellate court in Rodriguez v. Fireman's Fund Ins. Co. (1983) 142 Cal. App.3d 46, 53 [190 Cal. Rptr. 705] held that "[w]hile a preferred conclusion of an action is by final judgment, in cases where the liability of the insured is admitted and the underlying lawsuit is concluded by the statutory acceptance of an offer (Code Civ. Proc., § 998) followed by a judgment entered thereafter or an injured plaintiff's motion to dismiss with prejudice, the requirements of Royal Globe are satisfied." (Italics in original.)
Additionally, at least one appellate court has held that a claimant who settles with some tortfeasors and then recovers a net judgment of zero against other insured tortfeasors is not precluded by that judgment from bringing a bad faith suit against the breaching insurance carrier. (Schlauch v. Hartford Accident & Indemnity Co. (1983) 146 Cal. App.3d 926, 929 [194 Cal. Rptr. 658].)[4]
Nevertheless, a conclusive establishment of liability against the insured is a prerequisite to third party "bad faith" suits against insurers found in decisions interpreting Royal Globe. (Cf. Williams v. Transport Indemnity Co. (1984) 157 Cal. App.3d 953, 958-960 [203 Cal. Rptr. 868]; Rodriguez v. Fireman's Fund Ins. Co., supra, 142 Cal. App.3d 46, 53; Jackson v. State Farm Mutual Auto. Ins. Co., supra, 148 Cal. App.3d 1179, 1185; Nationwide Ins. Co. v. Superior Court, supra, 128 Cal. App.3d 711, 714.)
In Williams v. Transport Indemnity Co., supra, 157 Cal. App.3d 953, plaintiff made the same argument as appellant herein, i.e., initiation of legal action resulting in final determination of liability is not a condition precedent to maintenance of action against the insurer for violation of section 790.03, subdivision (h). The appellate court disagreed: "It is fundamental that an insurance contract is, by nature, an indemnity contract; no enforceable claim accrues against the insurer until the insured's liability is in fact established. [Citations.] Therefore, however well isolated facts may seem to indicate a time when liability had become reasonably clear to the insurer, if the insured had no liability in actual fact, the insurer can have breached no duty to settle a third party claim.[] As a consequence, the essential preliminary inquiry in any action alleging the insurer's violation of Insurance Code section 790.03, subdivision (h)(5) must be whether the insured was liable in actuality for the third party claimant's injury." (P. 960.) (3b) Since, appellant's complaint admits that a jury had determined Doctor Innes was *328 not liable for appellant's injury, it lacks an essential element of a prima facie case for violation of section 790.03, subdivision (h)(5), and fails to state facts sufficient to constitute a cause of action. (Cf. Jackson v. State Farm Mutual Auto. Ins. Co., supra, 148 Cal. App.3d 1179, 1185.)
(5) Moreover, principles of public policy and res judicata mandate this result. If, as appellant contends, the outcome of the malpractice suit is irrelevant in the subsequent "bad faith" action, appellant would be allowed to relitigate the issue of Doctor Innes' alleged negligence and liability to establish damages. It is a rational inference, in a third party action against an insurer, that the value of plaintiff's claim is equivalent to the amount of judgment entered against the insured. (Betts v. Allstate Ins. Co. (1984) 154 Cal. App.3d 688, 707 [201 Cal. Rptr. 528].)
Appellant's contention that res judicata is inapplicable because insurers were neither parties nor privies nor issues identical is specious. She repleaded here the exact claim of professional negligence against Doctor Innes that was previously concluded adversely. (6) Res judicata bars relitigation of an issue previously adjudicated between the same parties or their privies to final judgment on the merits. (Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd. (1962) 58 Cal.2d 601, 604 [25 Cal. Rptr. 559, 375 P.2d 439]; Bernhard v. Bank of America (1942) 19 Cal.2d 807, 813 [122 P.2d 892].) "(E)ven if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified." (Southern Pacific R. Co. v. United States (1897) 168 U.S. 1, 48-49 [42 L.Ed. 355, 377, 18 S.Ct. 18].)
(7) The doctrine of res judicata represents strong public policy promoting judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and providing repose by preventing a person from being harassed by vexatious litigation. (People v. Taylor (1974) 12 Cal.3d 686, 695 [117 Cal. Rptr. 70, 527 P.2d 622].) In point, the reviewing court in Nationwide Ins. Co. v. Superior Court, supra, 128 Cal. App.3d 711, 715 explained that it was to avoid possibilities of repetitive litigation that the Supreme Court in Royal Globe required that the underlying case be concluded by a judgment "final for res judicata purposes." Otherwise, insurers would not be collaterally estopped by judgments from relitigating, in third party actions, facts relating to questions of liability and damages.
(3c), (8) Appellant's complaint is a melange of statutory allegations replete with contradictory facts. Although a person to whom civil liability runs may enforce the Unfair Practices Act (§ 790 et seq.) by appropriate *329 action (Royal Globe, supra, 23 Cal.3d at p. 886; Greenberg v. Equitable Life Assur. Society (1973) 34 Cal. App.3d 994, 1001 [110 Cal. Rptr. 470]), it is clear that appellant's attempt to state violations of section 790.03, subdivisions (b) and (c) are also inextricably interwoven with respondents' conduct in the malpractice action (to the extent they have any semblance of validity at all). (9) (See fn. 5.) Since there is no reasonable likelihood appellant could amend deficiencies in her pleading, it was not error to sustain the demurrers without leave to amend.[5]
We find it unnecessary to decide the retroactivity of Royal Globe to facts which, as here, occurred prior to that decision.[6] As indicated supra, prior to that decision, only the insured had a cause of action against the insurer for bad faith failure to settle a claim. (Murphy v. Allstate Ins. Co., supra, 17 Cal.3d 937, 940-941.) Although the insured could assign his cause of action against the insurer, that cause of action would arise when he incurred a binding judgment in excess of policy limits. (Critz v. Farmers Ins. Group (1964) 230 Cal. App.2d 788, 799 [41 Cal. Rptr. 401, 12 A.L.R.3d 1142].)
(3d) Since we hold that a finding of liability against the insured was a prerequisite for appellant's third party claim, as pleaded or pleadable against respondents, appellant could not state a cause of action under either prior or present law.
Respondents request that we impose sanctions upon appellant for frivolous appeal. We were sorely tempted to do so since appellant's complaint and arguments ignore settled law and facts of the case. However, since recent cases have amplified the holding of Royal Globe to include other than final judgment of total liability on the insured's part, we prefer to give the benefit of the doubt to appellant and decline.
*330 The judgment is affirmed, each party to bear own costs and attorneys fees on appeal.
Gilbert, J., and Abbe, J., concurred.
Appellant's petition for review by the Supreme Court was denied January 16, 1986. Bird, C.J., was of the opinion that the petition should be granted.
NOTES
[1] It is the resulting judgment that is appealable rather than the order sustaining the demurrer, although we review the propriety of the order. (Jackson v. State Farm Mutual Auto. Ins. Co. (1983) 148 Cal. App.3d 1179, 1183, fn. 1 [196 Cal. Rptr. 474].)
[2] Appellant attached letters from parties concerned in settlement negotiations to the complaint and incorporated them by reference.
[3] All statutory references are to the Insurance Code unless otherwise indicated.
[4] Because Code of Civil Procedure section 877 requires that a plaintiff's claims against other tortfeasors must be reduced by amounts paid in good faith by settling tortfeasors, if plaintiff recovers more by settlement than he does at trial, that settlement reduces his judgment to zero by operation of law. (Schlauch v. Hartford Accident & Indemnity Co., supra, 146 Cal. App.3d 926, 930, fn. 2.)
[5] Appellant appears correctly to have abandoned her claim for declaratory relief. Declaratory relief operates prospectively, and not merely for redress of past wrongs. (Travers v. Louden (1967) 254 Cal. App.2d 926, 931 [62 Cal. Rptr. 654]; Babb v. Superior Court (1971) 3 Cal.3d 841, 848 [92 Cal. Rptr. 179, 479 P.2d 379].)
[6] Avila v. Travelers Ins. Companies (C.D.Cal. 1979) 481 F. Supp. 431, 436-437, held Royal Globe should not be applied retroactively. "The Royal Globe decision was as abrupt and surprising as reversal of the common understanding of prior law as is possible." (P. 436.) Schlauch v. Hartford Accident & Indemnity Co., supra, 146 Cal. App.3d 926 came to the contrary decision, noting that the duties imposed upon an insurer under section 790.03, subdivision (h) were imposed with the addition of that subdivision in 1972. (See Royal Globe, 23 Cal.3d at p. 885.) Thus, the Schlauch court reasoned, the decision in Royal Globe was merely a change in remedy of enforcing the duty of an insurer, and not a change in the duty itself. "Moreover, since insurers were statutorily prohibited from engaging in these unfair practices, they can claim no reliance upon the lack of legal authority for third party damages suits. In short, insurance carriers had fair warning that their conduct was prohibited." (146 Cal. App.3d at p. 934.)