Filed 1/6/14  S&B Services v. County of San Joaquin CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (San Joaquin)

----

| | |
|---|---|
| S&B SERVICES, INC., et al., | C070917 |
| Plaintiffs and Appellants, | (Super. Ct. No. 39-2008-00194066-CU-BT-STK) |
| v. | |
| COUNTY  OF SAN JOAQUIN, | |
| Defendant and Respondent. | |
| SAN JOAQUIN SAFETY COUNCIL et al., | C071085 |
| Plaintiffs and Appellants, | (Super. Ct. No. 39-2008-00194070-CU-BT-STK) |
| v. | |
| COUNTY OF SAN JOAQUIN, | |
| Defendant and Respondent. | |

S&B Services, Inc. (S&B), and San Joaquin Safety Council (Safety Council) operate programs licensed by the State of California (the State) and have provided

1

services for many years to driving under the influence (DUI) offenders on behalf of San Joaquin County (the County). After the County recommended that the State license an additional DUI program for County offenders, S&B and Safety Council (and their principals—collectively, plaintiffs) unsuccessfully sued the County and some of its personnel on various tort and contract theories, seeking to enjoin and overturn this license recommendation.

In these consolidated appeals, we shall affirm the judgments in favor of the County against plaintiffs.[1]

**LEGAL, FACTUAL, AND PROCEDURAL BACKGROUND**

*Legal Background*

On July 8, 2008, the County's Board of Supervisors unanimously rejected an assessment from County staff that an additional DUI program provider was not needed in the County, and recommended Service First of Northern California (Service First) for licensure by the State as a DUI program provider. The State accepted that recommendation.

Two statutes in the Health and Safety Code, and a regulation based thereon, govern the recommendation of DUI program licensure:

First, Health and Safety Code section 11836 states, for our purposes, that a county board of supervisors must "determin[e] a need" for a DUI program "when it initially

---

[1] The individual members of the County's Board of Supervisors and three county employees were also sued, but they were never served, they never appeared, and they are not parties to these appeals. The State and the additional DUI program were also sued, but they too are not part of these appeals. These appeals now involve only the County.

recommends a program to the [State]" for licensure. (Health & Saf. Code, § 11836, subds. (d), (a).)[2]

Second, section 11837.6, subdivision (a), states that the alcohol and drug program administrator of each county has the "major responsibility for assuring programmatic and fiscal integrity of each [DUI] program."

And, third, California Code of Regulations, title 9, section 9801.5,[3] provides as pertinent:

"(a) Consistent with chapter 9 [governing services provided to DUI offenders], section 11837.6 of the Health and Safety Code, the county board of supervisors shall:

"(1) Review, at its option, any new applications for licensure as DUI program and forward all applications recommended for licensure through the county alcohol and drug program administrator to the [State] for final review and approval. As part of the recommendation, in accordance with [Regulations] [s]ection 9805, the county board of supervisors shall include a statement assuring there is a need for a new DUI program in the county and assuring that the establishment of an additional DUI program will not jeopardize the fiscal integrity of existing licensed DUI programs.

"(2) Assure the [State] in writing of the programmatic and fiscal integrity of the DUI programs the county has recommended for licensure.

"(b) The county alcohol and drug program administrator shall:

---

[2] Undesignated statutory references are to the Health and Safety Code.

[3] Further references to regulations are to title 9 of the California Code of Regulations (Regulations).

"(1) Monitor to ensure compliance with the regulations contained in this chapter and the requirements in Chapter 9 (commencing with Section 11837.6), Division 10.5 of the Health and Safety Code.

"(2) Review any applications requested by the county for licensure as DUI program or proposed changes in the approved plan of operation and forward to the [State] all new applications or changes recommended for licensure by the board of supervisors."

*Factual Background*

Based on a February 29, 2008 staff report entitled "DUI Program Needs Assessment," the County's alcohol program administrator (the Director of Behavioral Health Services) concluded in June 2008 that the "data collected and reviewed in the assessment does not suggest that an additional DUI provider is needed at this time."

In its July 2008 order recommending that the State license Service First as an additional DUI program provider in the County, the County's Board of Supervisors found as relevant:

"[T]he Board of Supervisors finds, based on evidence presented by Sharon Simas [(Service First's principal)] refuting the February 29, 2008 needs assessment created by [the County's] Behavioral Health [Services], and with no opposition having been made or presented by any other party to the evidence presented by Ms. Simas, that there is a demonstrated need for a new DUI program and the establishment of an additional program will not jeopardize the fiscal integrity of existing licensed DUI programs. The Board of Supervisors makes these findings based on the following objective criteria presented to the Board without opposition:

"1) There has been a 68.3% increase in wet reckless convictions in [the County];

"2) There has been a 40% increase in DUI program enrollments in North Stockton;

4

"3) There has been a 15% increase in DUI program enrollments in South Stockton;

"4) There is no program in Stockton which can serve the treatment and education needs of persons convicted of drunk driving who no longer have a license to drive at a single location;

"5) There are no current service providers in the 95203 [(South Stockton)] and 95210 [(North Stockton)] zip codes which are the areas with the largest percent of growth; and

"6) The community is better served by having more providers to assist citizens than fewer."

*Procedural Background*

Based on the County's July 2008 order recommending that the State license Service First as an additional DUI program in the County, S&B sued the County for: (1) several torts and tort-like claims (failure to discharge a mandatory duty under Health and Safety Code sections 11836 and 11837.6 and Regulations section 9801.5, in light of the statute setting forth governmental liability for such a failure—Government Code section 815.6; negligent conduct in license recommendation; negligent and intentional interference with prospective economic advantage; unfair business practice; breach of fiduciary duty; and fraud, centered on promise without intent to perform and fraudulent breach of contract, and encompassing misrepresentation and suppression of fact); (2) breach of contract and breach of the covenant of good faith and fair dealing; and (3) injunctive and declaratory relief based on these claims.

The trial court sustained the County's demurrer without leave to amend regarding S&B's tort and tort-like claims; granted summary adjudication to the County on S&B's contractual claims; granted the County judgment on the pleadings concerning S&B's

5

requested injunctive and declaratory relief, as there were no causes of action left on which to grant such relief; and, consequently, granted judgment for the County.

The same claims from Safety Council (except for contractual breach, breach of fiduciary duty, and fraud, not alleged in Safety Council's complaint) met the same fate.

These appeals ensued.

## DISCUSSION

### I.  The County Did Not Fail to Discharge a Mandatory Duty to Plaintiffs

This issue, one of duty, underlies plaintiffs' tort and tort-like claims.

Pursuant to the Government Claims Act (Gov. Code, § 810 et seq.),[4] all public entities in California, state and local, are liable in tort only to the extent declared by statute, and have certain statutory immunities and defenses (Gov. Code, § 815).

Government Code section 815.6 of the Government Claims Act specifies, "Where a public entity is under a mandatory duty imposed by a[] [law] that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

Plaintiffs argue that under sections 11836 and 11837.6 and Regulations section 9801.5, the County had a mandatory duty to assure the State that there was a need for a new DUI program in the County; to assure the State that the establishment of an additional DUI program would not jeopardize the fiscal integrity of existing licensed DUI programs; and to avoid the illegal enforcement of valid statutes.

---

[4]  The Government Claims Act was formerly known as the Tort Claims Act.  (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 222, p. 372; *id.* (2013 supp.) § 216, pp. 71-72.)

6

Establishing governmental liability pursuant to Government Code section 815.6 requires that the mandatory duty be " 'designed' " to protect against the particular kind of injury the plaintiff suffered. That the mandatory duty imposed by a law " 'confers some benefit' " on the class to which plaintiff belongs is not enough; if the benefit is "incidental" to the law's protective purpose, the law cannot create liability under section 815.6. (*Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898, quoting *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 499.)

In its July 2008 order recommending Service First's licensure as an additional DUI program, the County did assure the State there was a need for a new DUI program in the County, and did assure the State that the establishment of an additional DUI program would not jeopardize the fiscal integrity of existing licensed DUI programs. Consequently, the County discharged the allegedly mandatory duties under sections 11836 and 11837.6 and Regulations section 9801.5.

Moreover, the purportedly mandatory duties imposed by sections 11836 and 11837.6 and Regulations section 9801.5 were not "designed" to protect against the particular kind of injury plaintiffs have alleged they suffered. As the County correctly notes, the Legislature's "fiscal integrity" language in section 11837.6 and Regulations section 9801.5 is designed to help alcohol abusers decrease their problem, not to help DUI program owners increase their bottom line. These laws were enacted pursuant to a legislative finding that problems related to the inappropriate use of alcoholic beverages include driving under their influence, with attendant loss of life, permanent disability, and property damage. (§ 11760.) The benefit that plaintiffs derive from section 11837.6 and Regulations section 9801.5—business profits—is *incidental* to the legislative purpose of those laws.

Furthermore, since the County does not have any *mandatory duty to plaintiffs* based on Health and Safety code sections 11836 and 11837.6 and Regulations section

7

9801.5, the Government Claims Act immunity from liability for *discretionary* action or inaction on a license comes into play with respect to plaintiffs. Under Government Code section 818.4, "[a] public entity is not liable for an injury caused by the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny, suspend or revoke, any permit, license, certificate, approval, order, or similar authorization where the public entity . . . is authorized by enactment to determine whether or not such authorization should be issued, denied, suspended or revoked." (See *Morris v. County of Marin* (1977) 18 Cal.3d 901, 917 [Government Claims Act immunities from liability are inapplicable in the context of a failure to discharge a mandatory duty; to hold otherwise would nullify the mandatory duty]; *Old Town Development Corp. v. Urban Renewal Agency* (1967) 249 Cal.App.2d 313, 334 [government agency immune from damage suit claiming improper award of development project to one developer over another].)

Plaintiffs' contention that the County illegally used valid statutory authority to recommend Service First for licensure fails in light of our conclusions above.

Finally, to the extent plaintiffs argue the evidence is insufficient to support the County's findings in its July 2008 order—that there was a need for a new DUI program in the County, and that the establishment of an additional DUI program would not jeopardize the fiscal integrity of existing DUI programs—plaintiffs have forfeited that argument. (*Oliver v. Board of Trustees* (1986) 181 Cal.App.3d 824, 832.) In their briefing, plaintiffs have cited only the evidence favorable to them—the Needs Assessment Report from the County's Behavioral Health Services; and have ignored the evidence unfavorable to them—the six items of evidence that the County delineated in its July 2008 order.

8

## II.  Summary Adjudication of the Contractual Claims Is Proper

The trial court granted summary adjudication to the County on S&B's causes of action for breach of contract and for breach of the covenant of good faith and fair dealing.[5]

We affirm this summary adjudication for a simple reason.  As the County correctly argues, no term of the alleged contract between S&B and the County purports to restrict or otherwise affect the Board of Supervisors' future exercise of discretion in deciding who to recommend for DUI program licensure, and any such contract would be void as against public policy in constricting rightful governmental action.  (See *Avco Community Developers, Inc. v. South Coast Regional Com.* (1976) 17 Cal.3d 785, 800 [government may not contract away its right to exercise the police power in the future].)  In short, as the County also notes, "[n]o term of the alleged contract purports to confer upon S&B a perpetual government-sanctioned monopoly within a given geographical area."

With the demise of S&B's breach of contract action, so too falls its contractual-dependent causes of action for breach of the covenant of good faith and fair dealing, for fraudulent breach of contract, and for fraud (centered on promise without intent to perform and fraudulent breach of contract).

## III.  Injunctive and Declaratory Relief Cannot Stand Alone as Causes of Action

As its final measure in this matter, the trial court granted judgment on the pleadings to the County on the only remaining causes of action after the County's demurrer and summary adjudication (plaintiffs' claims for injunctive and declaratory relief), and in turn granted judgments to the County.

---

[5]  Apparently, Safety Council has not raised any contractual issues on appeal; to the extent it does so, the above analysis applies to it as well.

The trial court properly did so.  "Injunctive relief is a remedy and not, in itself, a cause of action, and a cause of action must exist before injunctive relief may be granted." (*Shell Oil Co. v. Richter* (1942) 52 Cal.App.2d 164, 168.)  Similarly, declaratory relief cannot exist on its own without any extant issue to resolve through judicial declaration. (See *Sych v. Insurance Co. of North America* (1985) 173 Cal.App.3d 321, 329, fn. 5.)  All of plaintiffs' substantive causes of action had properly been extinguished by the time of the County's motions for judgment on the pleadings; at this point, plaintiffs' "causes of action" for injunctive and declaratory relief were the legal equivalent of a man without a country.[6]

## IV.  Procedural Irregularities

In their briefing, plaintiffs allude to some procedural irregularities in the County's licensure recommendation process here—most prominently, that Service First's application for such a recommendation was not in the proper format.

We dispense with this claim, citing a procedural irregularity of our own— plaintiffs have failed to provide a separate heading in their briefing summarizing this issue; consequently, they have forfeited it.  (Cal. Rules of Court, rule 8.204(a)(1)(B); see *Live Oak Publishing Co. v. Cohagan* (1991) 234 Cal.App.3d 1277, 1291.)

---

[6] Safety Council also apparently appeals the trial court's 2008 order denying its application for a *preliminary* injunction.  That contention has been mooted in light of our resolution.

10

## DISPOSITION

The judgments against S&B and Safety Council, in favor of the County, are affirmed. The County is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                                                                      BUTZ_____, J.


We concur:


_____ROBIE_____, Acting P. J.


_____HOCH_____, J.

11